Salvatore G. CRISAFI, Appellant,

v.

UNITED STATES, Appellee.

No. 11149.

District of Columbia Court of Appeals.

Argued Oct. 20, 1977.

Decided Feb. 1, 1978.

William G. Simmons, Rockville, Md., with whom Robert R. Michael, Gaithersburg, Md., was on the brief, for appellant.

Robert I. Richter, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Richard H. Saltsman, Asst. U. S. Atty., Washington, D. C., entered an appearance, for appellee.

Before KERN, GALLAGHER and HARRIS, Associate Judges.

KERN, Associate Judge:

Appellant was found guilty of rape, D.C. Code 1973, § 22–2801, and assault with intent to commit rape, D.C.Code 1973, § 22–501. On appeal, he contends that while the joinder of these two offenses under Super. Ct.Cr.R. 8(a) was proper, the trial court's denial of his motion for severance under Super.Ct.Cr.R. 14 constituted error. Appellant also claims that other rulings made by the trial court were erroneous,[1] and that comments made by the prosecutor during his closing argument and during cross-examination, although unobjected to at trial, rose to the level of plain error and, as such, may be noticed for the first time on appeal.

 Super.Ct.Cr.R. 8(a) permits joinder in the same indictment of offenses "of the same or similar character" and during oral argument before this court, counsel for appellant conceded that the joinder of the

---

1. Appellant cites the trial court's denial of the following three motions as error: (1) motion to suppress evidence; (2) motion for a mistrial or, alternatively, for a continuance; and (3) motion for a judgment of acquittal, or alternatively, for a new trial.

two offenses here was proper. However, appellant made timely protest to the court about the trial together of the two crimes allegedly committed by him against two different victims on separate occasions. Hence, the question presented is whether the trial record " . . . reveals a sufficient possibility of *undue* prejudice by reason of such joinder as to require reversal," *Tinsley v. United States,* D.C.App., 368 A.2d 531, 533 (1976) (emphasis added); *Drew v. United States,* 118 U.S.App.D.C. 11, 13, 331 F.2d 85, 87 (1964). This in turn requires a balancing of the possible prejudice to the accused against the legitimate probative force of the evidence and considerations of judicial economy and efficiency.[2] *Tinsley v. United States, supra* at 533; *Drew v. United States, supra,* 118 D.C.App. at 14, 331 F.2d at 88. This court has recognized that the joinder of similar but unrelated offenses creates a possibility of prejudice to the accused. *Arnold v. United States,* D.C. App., 358 A.2d 335, 338 (1976) (en banc). *See Cupo v. United States,* 123 U.S.App. D.C. 324, 327, 359 F.2d 990, 993 (1966), *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967).

█ No prejudicial joinder has been found and the denial of a motion for severance upheld (1) where the evidence of each of the crimes charged would be admissible in a separate trial for the other offense, *see Tinsley v. United States, supra* at 534; *United States v. Adams,* 156 U.S.App.D.C. 415, 416, 481 F.2d 1099, 1100 (1973); *Hill v. United States,* 135 U.S.App.D.C. 233, 235 (dictum), 418 F.2d 449, 451 (1968); *Baker v.* *United States,* 131 U.S.App.D.C. 7, 24, 401 F.2d 958, 975, *on remand,* D.C., 301 F.Supp. 973, 977, *aff'd* 139 U.S.App.D.C. 126, 430 F.2d 499, *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *Drew v. United States, supra* 118 U.S.App.D.C. at 16, 331 F.2d at 90, and (2) where the offenses are fairly separable by simple and distinct proof. *Tinsley v. United States, supra* at 533; *Arnold v. United States, supra* at 338–39; *Drew v. United States, supra,* 118 U.S. App.D.C. at 17, 331 F.2d at 90. We conclude in the instant case that evidence of the one charge against appellant would have been admissible at a separate trial of the other and hence the trial court's refusal to sever was proper.[3]

█ The rule that the prosecution may not introduce evidence of other criminal acts by the accused in order to suggest a criminal disposition on his part nevertheless permits numerous exceptions. Evidence of other criminal acts may be offered to show: intent, malice, motive, knowledge, absence of mistake or accident, opportunity, identity, preparation, plan, continuing scheme or conspiracy. 1 Jones on Evidence § 4:15 (1972); McCormick, Handbook of the Law of Evidence § 157 (1954); 2 Weinstein's Evidence ¶ 404[09] (1976). *See* Federal Rules of Evidence Rule 404(b); Uniform Rules of Evidence, 13 U.L.A. p. 214. Some of the circumstances in which evidence of one offense would be admissible in the trial of another were outlined in the leading case of *Drew v. United States, supra,* 118 U.S. App.D.C. at 16, 331 F.2d at 90:

> Generally, too, prejudice will be presumed from the admission at the trial of one offense of evidence of other crimes unless that evidence is admissible for a substantial and legitimate purpose. *Tinsley v. United States, supra* at 533, *Drew v. United States, supra,* 118 U.S.App.D.C. at 15–16, 331 F.2d at 88.

---

**2.** Such prejudice may take several forms: (1) the accused may become embarrassed or confounded in having to present separate defenses to each offense; (2) the jury may use the government's evidence of one crime to infer a criminal disposition on the part of the accused which leads to a finding of his guilt of the other charges; (3) the jury may cumulate the evidence of the various crimes and find guilt although guilt might not have been found if the evidence of each crime was considered separately; and (4) more hostility may be aroused in a jury toward an accused charged with multiple offenses as opposed to an accused charged with a single crime. 1 Wright, Federal Practice and Procedure, *Criminal,* § 222 at 437.

**3.** Given our disposition of this appeal we need not consider the government's argument here that no prejudicial joinder occurred since the evidence of each crime presented against appellant was simple and distinct and, thus, readily separable by the jury during its deliberations.

Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. [footnote omitted]. When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value. [*Id.* at 16, 331 F.2d at 90.]

We conclude in this case that due to the unusual factual similarities between the two offenses charged that evidence of each crime would have been admissible in a separate trial of the other to show identity and motive, and, in the case of the charge of assault with intent to rape, to show intent.[4]

■ Concerning identity,[5] *Drew v. United States, supra,* recognized the "signature crimes" exception which permitted the reciprocal admissibility of evidence of one crime in a trial of the other:

[I]f the facts surrounding the two or more crimes on trial show that there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed, [footnote omitted], the evidence of one would be admissible in the trial of the other to prove identity. [*Id.* at 16, 331 F.2d at 90; emphasis added.]

Appellant's *modus operandi* in each case presents virtually a textbook illustration of a signature crime. Both cases involved single women in their twenties. Appellant approached each woman, who was apparently alone in a public place, and initiated a conversation, while posing as a foreigner in need of assistance due to his language difficulties. Appellant falsely told each woman his name was "Simone," while telling neither woman his last name. Although appellant was an Italian citizen who had lived in France, he posed as a Frenchman in both encounters. During his initial meeting with each woman, appellant feigned an inability to speak English and spoke only in French. Appellant attempted to arrange a date during this initial contact, and although rebuffed in each instance, he was able to obtain each woman's name and telephone number. Appellant later arranged a date through "George", his purported English speaking roommate who subsequently communicated with each woman by telephone and claimed that "Simone" had been unfairly rejected because of his nationality. Neither woman knew that, in reality, "George" was the appellant who had merely adopted

---

4. In *Arnold v. United States, supra,* this court emphasized, *inter alia,* the similarities between the two offenses joined there and affirmed the trial court's denying severance under Super.Ct. Cr.R. 14:

[T]he methods employed by the rapist in each case were *strikingly similar.* For example, in each case the rapist, driving a light blue Volkswagen, invited the victim into the automobile as an act of friendly concern and for an apparently innocent purpose. In each case the friendly attitude of the rapist changed suddenly, and without provocation, to one of anger accompanied by threats of bodily harm and death, because of some injury allegedly perpetrated on him or some of his relatives by the victim or some one of her relatives. In each case the rape was accomplished by first putting the victim in fear of her life and then apparently abandoning that purpose and demanding . . . sexual intercourse. Finally, after each rape the victim

was treated kindly and returned to her destination. [*Arnold v. United States, supra* at 338–39; emphasis added.]

5. Appellant urges that his identity was never in issue at trial because he admitted from the stand during trial that he had been with each complainant. Hence, he argues, the probative value of the "other crimes evidence" was minimal as compared with its prejudice to him in the eyes of the jury. This contention overlooks the fact that appellant did *not* admit his presence with both complaining witnesses until *after* the government had presented its evidence. The prosecution was required in its case to prove *all* elements of the crime charged, which, of course, includes identity of the perpetrator. *See United States v. Cockerham,* 155 U.S.App. D.C. 97, 100, 476 F.2d 542, 545 (1973). Furthermore, as pointed out below, the other crime's evidence had probative value insofar as showing appellant's motive and intent.

this English speaking persona for use in arranging the dates with the women. Appellant was able to convince each woman of "George's" existence since "George" spoke English while the appellant represented himself as a Frenchman whose English was quite poor. Moreover, neither woman had reason to believe that "George" was a figment of "Simone's" imagination since "George" only spoke to them over the telephone, purportedly interceding in "Simone's" behalf to cajole each woman to agree to go out on a date. When conversing with each woman face to face, appellant spoke only in French.

In both cases, appellant indicated to his date that they would be going out for the evening although in each case they actually spent most of the evening alone, either in the apartment of his date or in his own. Although appellant was an insurance salesman, he presented himself in a role he thought more alluring. To one woman he posed as an aviator for a French airline and to the other he presented himself as a French chef. Appellant also falsely claimed he was a student in both instances and, in each case, appellant sexually attacked his date during the first evening they were alone. A similar sequence of events preceded each attack. Once they were alone, appellant and his date drank wine and discussed different cultures in French. Appellant then became sexually aggressive. When his advances were rebuffed, he became enraged and immediately resorted to violence in order to force his date to submit to his sexual demands. Appellant struck each woman with his fists, held her by the hair and tore at her clothing. On both occasions the attack occurred after appellant and his date had been alone for approximately one hour. During each assault, appellant spoke only in French. Both assaults were totally out of character for what appeared to be the otherwise polite appellant and, in both cases, the attack occurred at night between ten and eleven o'clock. The attacks occurred one week apart.

In addition, we conclude that evidence of each crime would have been admissible in a separate trial of the other to show motive on appellant's part. Motive was at issue because his defense at trial was that one complainant consented to have sexual relations with him; and, in the case of the complainant with whom he did not have sexual intercourse, he testified that she physically attacked him during an argument over politics. Thus, if appellant had been tried separately on each charge, evidence of the rape of one complainant would have clearly been admissible to show criminal intent on his part when he struck the other complainant and tore her clothing in the assault with intent to commit rape.

Since the court's refusal to sever for trial these two similar offenses can be reversed on appeal only for an abuse of discretion, *Arnold v. United States, supra* at 339, *Hurt v. United States*, D.C.App., 314 A.2d 489, 491–92 (1974), *Coleman v. United States*, D.C.App., 298 A.2d 40, 42 (1972), cert. denied, 413 U.S. 921, 93 S.Ct. 3070, 37 L.Ed.2d 1043 (1973); 1 Wright, Federal Practice and Procedure, *Criminal* §§ 221–227, and in light of the facts of this case, we are unable to say the trial court did abuse its discretion.[6]

Appellant also argues that the trial court's denial of his pretrial motion to suppress evidence concerning his assault with intent to commit rape was erroneous. The specific items sought to be suppressed as fruits of a warrantless search of his apartment to which he allegedly did not consent were a blood-spotted couch cover, bloody bed sheets, and a piece of paper containing the name and telephone number of the complaining witness. After a hearing, the trial court made findings of fact and concluded that appellant voluntarily consented to the police search of his apartment for the man known as "Simone" and that, during this search, police found the sheets, couch cover and note pad in plain view.

---

6. If anything, the trial court exercised its discretion in appellant's favor by refusing to permit the prosecution to introduce evidence of a similar sexual assault that occurred in Virginia a few days before the offenses in this case.

We recognize that:

The ultimate determination by a trial judge at a suppression hearing as to the issue of consent, whether it be consent to enter or consent to search, is factual in nature. As such, under the guidelines established . . ., that determination must remain untouched on appeal unless it is "clearly erroneous." [*Terrell v. United States*, D.C.App., 361 A.2d 207, 210 (1976), *quoting United States v. Sheard*, 154 U.S.App.D.C. 9, 16, 473 F.2d 139, 146 (1972).]

Under this standard, the trial court's finding of consent should not be disturbed since it is amply supported by the record and hence not "clearly erroneous." The record indicates that at approximately 6:30 in the morning two plainclothes detectives and two or three uniformed policemen went, without a warrant, to appellant's apartment. Appellant admitted the police officers who announced they were looking for "Simone" upon the basis of the complainant's report to them of his attempt to rape her in that apartment.[7] Appellant also permitted the police to search the upstairs of his apartment for "Simone." During their search, the bloody sheets and blood spotted couch cover were in plain view of the police. Up to this point of the search, the police apparently believed that appellant was "George," Simone's phantom roommate, since (1) appellant had indicated to them that "Simone" was out; (2) appellant did not completely match the description given by the complainant of her assailant; and, (3) the police believed that "Simone," the supposed perpetrator of the crime, was unable to speak English, whereas the man confronting them could do so. However, when appellant identified himself as "Salvatore G. Crisafi", the police became suspicious and received his permission to telephone the complainant in order to clarify her description of "Simone." While using the phone with appellant's consent, the detective saw the complainant's name and phone number written on a pad on the telephone table.

Since the only evidence at the suppression hearing was police testimony that appellant voluntarily consented to the warrantless search of his apartment, that appellant appeared alert and able to converse fluently in English with the officers, and that appellant attempted to conceal his true identity as "Simone," we are persuaded the trial court's finding of consent to the search was not "clearly erroneous."[8]

Appellant also argues that the prosecutor, during cross-examination and during his closing argument, improperly implied that appellant suffered from a sexual disorder. These comments were not objected to at trial by defense counsel. While an appellate court may notice plain error even when no objection is taken at trial, before it will do so there must be a showing of a probability of a miscarriage of justice. *Lloyd v. United States*, D.C.App., 333 A.2d

---

7. The police had a reason other than searching for "Simone" to enter appellant's apartment: according to police testimony, another purpose for entry was to investigate the alleged crime scene and to determine if appellant's apartment was, in fact, where the offense had occurred. At this time, the police had substantial uncertainty, on the basis of the complainant's story, where the offense had occurred. The offense occurred at night and the first time the complainant visited "Simone's" apartment. The complainant had indicated her uncertainty to the police regarding the exact location of the assault.

8. Appellant later took the stand in his own defense and described the search. Although this testimony was not before the trial court at the time it found a consensual search, in his testimony appellant's evasions and ambiguities weaken his claim of lack of consent to the police search:

Q. Did he ask you if he [the detective] could look upstairs to see if Simone was there?
A. I would not like to be specific about that, only when he asked me for Simone and I said what I said. They came in. They didn't ask any more questions; just went in and started looking around.
Q. Did you answer his question when he asked if Simone might be upstairs?
A. Simone might be upstairs?
Q. Did you answer Detective Gaine's question when he asked you might Simone be upstairs?
A. I don't recall.
Q. Did you mumble under your breath to him?
A. Maybe.

387, 390–91 (1975); *Adams v. United States*, D.C.App., 302 A.2d 232, 234 (1973). We are not convinced that references to an unverified sexual disorder on the part of appellant made by the prosecutor during cross-examination and during his closing argument to the jury could have so affected appellant's substantial rights as to cause a probable miscarriage of justice. The prosecution presented testimony from each victim detailing what appellant had done and circumstantial evidence was presented incriminating appellant. His version of each incident, *viz.*, that the complainant consented or no assault with intent to rape occurred, was apparently unpersuasive to the jury in the light of the government case.

Appellant's other two assignments of error; *viz.*, the trial court's refusal to grant (1) a mistrial or a continuance, and (2) a judgment of acquittal, or alternatively, a new trial, are also without merit. During the trial, appellant's attorney unsuccessfully sought either a mistrial or a continuance in order to permit appellant to obtain other counsel so his original counsel might testify as a witness.

 This testimony was proffered in connection with the intensity of the lighting intensity of the lighting in the rape victim's living room. This issue, appellant contends, was of critical evidentiary significance and rested upon a statement obtained by his trial attorney during an interview with the complainant which would purportedly corroborate appellant's defense of consent. In his defense, appellant had testified that he turned off the living room light at the complainant's request before they engaged in sexual intercourse. Appellant now claims that had his trial counsel been permitted to testify, "substantial corroboration . . . [of his] version of consensual sexual relations" would have been provided. We disagree. The record indicates merely that the interview between appellant's trial counsel and the complainant produced some uncertainty in her testimony at trial regarding the extinguishing of the living room lights. Nowhere does the record suggest that this interview produced evidence which would have corroborated appellant's claim of *consensual* rather than forced sexual intercourse.

Appellant's final contention is that the trial court's denial of his motion for a judgment of acquittal, or alternatively, for a new trial, was erroneous because the facts in each case were insufficient, as a matter of law, to establish guilt beyond a reasonable doubt. Upon review of the record we reach a contrary conclusion and therefore the jury's determinations of guilt must be and are

*Affirmed.*