Theresa M. PAGE, Appellant,

v.

UNITED STATES, Appellee.

No. 80–353.

District of Columbia Court of Appeals.

Argued May 13, 1981.

Decided Nov. 23, 1981.

Edward N. Reiner, Washington, D.C., appointed by this court, for appellant.

Melvyn H. Rappaport, Asst. U. S. Atty. with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and Paul L. Knight, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, MACK and FERREN, Associate Judges.

KERN, Associate Judge:

Appellant challenges her judgment of conviction after a jury trial for assault with intent to commit robbery on the ground that the trial court erred in admitting evidence of past illegal activity on her part under the exceptions articulated in *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).[1]

As the court pointed out in *Willcher v. United States*, D.C.App., 408 A.2d 67 (1979), it is necessary, in determining whether the probative value of the challenged evidence outweighs its prejudicial impact to scrutinize the relevance of the evidence so admitted.[2] Accordingly, we review and summarize the facts in the instant case.

The government presented in its case-in-chief testimony from three witnesses in addition to the so-called prior crimes evidence which is the subject of the instant appeal.

One witness, the complainant, testified that he was confronted by two women as he walked down the street on May 30, 1979, while taking an after-dinner stroll from his hotel at 15th and L Streets. While he was waiting at the intersection of 14th and L for the street light to change, the women touched him about his body and propositioned him to have sexual intercourse. He pushed them away when the light had changed and he walked about one-half block before he realized that money he had been carrying in the pocket of his trousers was missing. He alerted a passing police officer, retraced his steps, saw the two women who had just approached and fondled him and pointed them out to the watching officer.

The officer, the second witness, then testified that he confronted the women after radioing in a report that he had two robbery suspects in custody. The women, apparently overhearing the officer's radio message, denied that they had committed a robbery and both offered money to be given to the complainant in order that they might avoid "a robbery beef".

The third witness, a police officer who had come on the scene to assist the arresting officer, merely corroborated many of the first officer's statements.

Defense counsel, on cross-examination of these three witnesses, elicited certain facts. The complainant was unable to identify the appellant in court as one of the two women he had encountered that night; he was able to testify only that he knew he had money in his pocket at the time he checked into his hotel at 7 p. m., but that it was missing from his pocket at 10:15 p. m., after his street encounter; and, that he never saw appellant's hand in his pocket.

The police officers were able to testify only that one of the two women complainant pointed out that night was appellant; they were unable to testify as to what occurred between the woman and the complaining witness before the arrest was made.

The prosecutor, out of the presence of the jury, made a proffer of the testimony of a police officer from the Prostitution Squad who was familiar with certain past activities of the appellant. The trial court, after permitting cross-examination of the proffered evidence, admitted this testimony to show (a) knowledge or intent or (b) a scheme or plan or modus operandi on the part of appellant, and so instructed the

---

1. *Drew* stated:

Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. [*Id.* at 16, 331 F.2d at 90; footnote omitted.]

2. *Willcher* stated:

To assess the probativeness and relevance of a prior incident, two threshold determinations must be made: (1) was an issue raised on which other crimes evidence could be received; and (2) was the proffered evidence relevant to that issue. Whether an issue has been raised for purposes of receiving other crimes evidence depends upon both the elements of the offense charged and the defense presented. [*Id.* at 75; citations omitted.]

jury. The court used almost verbatim the standard instructions from the *District of Columbia Criminal Jury Instructions*, No. 2.49, at the time the testimony was given and again immediately prior to the jury's deliberations.

Thus, the jury was *twice* told by the court that, if it accepted the evidence of the two earlier incidents, such evidence was to be considered *only* for the limited purpose of whether or not appellant had the intent to commit robbery. (Record at 138–39, 192–93). Indeed, the prosecutor in his argument to the jurors reinforced that the evidence was limited to showing "what is going through this woman's mind [appellant] when she was placing her hands on [the complainant]." (Record at 183).

This witness testified that he had observed appellant in the 14th and L Street area on two occasions prior to the trial engage in certain acts similar to those for which she was being tried; the first time was somewhat more than a month and the second time was six months prior to the incident for which appellant was being tried.

On the first occasion he had seen appellant and two other women enter an automobile and place their hands all over the body of the male driver. The officer had then intervened and ordered the women, including appellant out of the car. He then asked the drive to step out of the car and see if the latter was missing money from his pants pockets. When it appeared from the driver's actions that he was, the officer searched the car and found currency belonging to the driver in the front seat where two of the women had just been sitting. No charges were filed nor arrests made regarding that incident.

On the second occasion, the testifying officer had observed appellant and another woman approach a man walking in or near the intersection of 14th and L Streets and engage him in a conversation and rub their hands about his body. He saw appellant place her hand into the pocket of the man's topcoat and jacket while this occurred. Immediately thereafter, the witness observed appellant and her companion turn away from the man and walk a short distance and appellant hand some money to her companion. The testifying officer was unable to confront appellant and her companion or speak with the victim because the nature of his duties at the time did not permit him to leave his assigned post. No arrests were made nor charges filed regarding that incident.

Defense counsel moved for a judgment of acquittal at the conclusion of the prosecution case. The motion was denied; the defense rested and again moved for a judgment of acquittal, which the court denied. The theory of the defense was set forth in defense counsel's summation to the jury. Counsel argued that although appellant had approached complainant, as alleged, and had fondled and touched complainant, as alleged, she had not entered or tried to enter his pockets nor attempted to remove money or valuables from his person. Defense counsel's argument was that appellant's conduct was at most what the complainant had originally thought it to be, *viz.*, the solicitation by a prostitute for illicit sexual relations in exchange for money.

■ We are of the opinion that under the particular circumstances the testimony concerning appellant's past illegal activity was relevant and highly probative. This evidence tended to show that on the night in question appellant, while touching the complaining witness, placed her hand into his pocket with intent to remove money. Put another way, the challenged evidence supplied the requisite proof that appellant touched the complainant with the intent to remove money from his person and hence, committed an assault with intent to commit robbery. In sum, the evidence was essential to the proof of the prosecution case and so its probative value outweighed the prejudice to appellant.

■ Appellant argues (Brief at 6), that the challenged testimony of the officer "relates to mere observations which . . . do not reach the level of the type of 'crimes,' 'uncharged offenses,' or 'prior illegal activity'

contemplated in *Drew* or any other subsequent decision of this court." In *Willcher v. United States, supra* at 75, and in *Light v. United States,* D.C.App., 360 A.2d 479 (1976), we recognized that the *Drew* exception applied to unlawful activity that had not been adjudicated a crime. Here, the activity by appellant which the officer observed meets this standard since such activity was unlawful. Moreover, the officer's testimony as to what he himself observed appellant do on the two prior occasions was eyewitness testimony and, hence, "clear and convincing evidence" that she was connected with these other unlawful incidents. *See United States v. Bussey,* 139 U.S.App. D.C. 268, 273, 432 F.2d 1330, 1335 (1970).

Appellant next argues (Brief at 7), citing *Bridges v. United States,* D.C.App., 381 A.2d 1073 (1977), that her activity on the two occasions about which the officer testified was not so similar to the crime charged in the instant case that it was admissible under the *Drew* exception. We disagree since her prior unlawful acts were quite similar in kind and reasonably close in time and distance to the crime charged.

▮ Finally, appellant argues (Brief at 8) that the probative value of the challenged testimony was far outweighed by its prejudicial effect upon her before the jury. However, as appellant acknowledges in her brief (at 9), the prosecution case was "insubstantial" because it "offered no direct proof from the complainant . . . that the Appellant had committed the act charged." Indeed, appellant's defense was that her fondling of complainant was strictly of a sexual nature and wholly lacking in larcenous intent. The evidence of her past unlawful activity was offered to show that when appellant fondled the complainant, she did *not* do so as a part of sexual solicitation but with intent to remove money from

his pockets. *See Willcher v. United States, supra* at 76.

In contrast to the considerable probative value of the challenged evidence, its prejudicial impact was relatively slight by reason of (1) the limiting instructions given the jury both when this evidence was admitted and in the court's charge upon conclusion of the trial, and (2) the ease with which the jurors could keep these two prior incidents separate and distinct from the relatively uncomplicated offense for which appellant was being tried. Accordingly, the judgment of conviction must be and is

*Affirmed.*[3]

FERREN, Associate Judge, dissenting:

Although Officer Curry testified that the complaining witness, Mr. Straughan, had identified appellant on the night of the incident, Straughan himself "was unable to identify the appellant in court." *Ante* at 196. As to the theft, moreover, Straughan could testify only that money he had in his pocket at 7:00 p. m. "was missing from his pocket at 10:15 p. m., after his street encounter"; he admitted that "he never saw appellant's hand in his pocket." *Ante* at 196. Thus, as the government's counsel acknowledged at oral argument, Officer Haggerty's testimony about the two prior incidents involving appellant was crucial to the government's case.

Over defense objection, the trial court admitted Officer Haggerty's testimony under two of the familiar exceptions for past illegal activity specified in *Drew v. United States,* 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964); *see ante* at 196 n.1—in particular, the exceptions for unlawful activity showing "intent" and for unlawful activity showing "a common scheme or plan" (defined by the trial court to include "mo-

---

**3.** The dissent concludes that testimony by the detective concerning the first incident in April, when he had observed appellant and two other females "get into the car and virtually surround the driver [a male]", goes "too far afield". *See* pp. 199–200 *infra.*

This testimony concerning the April incident, which is set forth in the Appendix to the dissent, was probative and hence admissible on the issue of whether appellee's touching the complainant was with intent to remove money from his pocket. Accordingly, the court's ruling was not error.

dus operandi").[1] Even if we conclude that these exceptions are applicable—although I have doubts about the common scheme exception [2]—I cannot agree that the April incident, which Officer Haggerty mentioned first, is sufficiently probative of intent to commit robbery to warrant its admission under an instruction permitting that inference.

In the present case, the government attempted to show that appellant (or her companion) placed a hand in Mr. Straughan's pocket and removed money. Similarly, in the October incident, according to Officer Haggerty, appellant placed her hand in a passing pedestrian's pocket, although he did not see her remove anything. In the April incident, however, Officer Haggerty did not see the women place their hands in the driver's pocket, let alone remove anything; the evidentiary basis for inferring attempted theft was marginal. *See* Appendix.

The government had to rely on the testimony of Officer Haggerty to establish, circumstantially, that appellant assaulted the complaining witness with the intent to rob (a specific intent crime). I agree that the October incident was probative of that intent. But "other crimes" evidence, which is inherently prejudicial, has its limits. In my judgment the April incident was too far afield. The trial court tolerated impermissible bootstrapping by admitting such thin circumstantial evidence of another possible

1. The court twice gave limiting instructions to the jury generally following the language of the Criminal Jury Instructions for the District of Columbia, No. 2.49 (3d ed. 1978). At the time Officer Haggerty testified, the court instructed:

   THE COURT: And I want to give you a special instruction. This evidence, these prior two alleged prior acts, was admitted only for your consideration of whether or not it tends to show the following: A, that this Defendant had the intent to commit the offense for which she is now on trial and that the Defendant had a scheme or plan or modus operandi which included the offense for which she is now on trial.

   Now, you are not required to accept this evidence and whether you accept it or not is a matter for you to decide as jurors. But if you decide to accept that evidence, you may do so only for the limited purposes that I have just explained to you and you may not consider it as tending to show in any way the Defendant's guilt of the offense with which she is now on trial in this case.

   Immediately before the jury retired for deliberation, the court gave the instruction again, minus the earlier reference to "modus operandi."

2. I do not believe the two incidents described by Officer Haggerty, which took place one and six months, respectively, before the incident at issue here, come within the commonly understood meaning of the "common scheme or plan" exception, which *Drew* defines narrowly: "A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other." *Id.* at 16, 331 F.2d at 90. *See United States v. Foskey*, 204 U.S.App.D.C. 245, 250, 636 F.2d 517, 523 n.5 (1980) (interpreting Fed.R.Evid. 404(b)) (acts separated by a substantial time period do not constitute a "common scheme"); *United States v. Manafzadeh*, 592 F.2d 81, 88 (2d Cir. 1979) (interpreting Fed.R.Evid. 404(b)) (acts occurring four to seven months after offense charged are not part of "common scheme"). However, as originally given, the instruction covered not only a common scheme or plan embracing several events but also a standard mode of operation for separate crimes over a longer period of time—a "modus operandi" or "signature." Evidence of a "modus operandi" is admissible under a different *Drew* exception: it is probative of "identity." *See Calaway v. United States*, D.C.App., 408 A.2d 1220, 1226 (1979) (evidence of prior assault admissible to show modus operandi where government alleges that, in both prior assault and offense charged, defendant approached a young woman on pretense of looking for room to rent, forced her to remove her clothes, subdued her with a blow to the jaw, climbed atop her and strangled her); *Crisafi v. United States*, D.C.App., 383 A.2d 1, 4–5 (1978) (evidence of prior rape admissible to show modus operandi where government alleged that, in both prior rape and offense charged, defendant approached a woman in a public place and introduced himself as "Simone," later telephoned the woman, saying he was "George", Simone's roommate, and urging her to date Simone, and then attempted to rape her on the resulting "date"). In this case, I conclude the court's instruction was broad enough that the jury would understand it was directed, basically, at the question of identity—despite the fact that when the court restated its instruction just before the jury retired to deliberate, it defined the scope of the exception as "a scheme or plan which included the offense for which they are now on trial," without reference to "modus operandi." If we do not interpret the instruction this broadly, the trial court committed error, *see Calaway, supra*, at 1227 n.12, which under the circumstances of this case could not be harmless.

robbery. This evidence was of little probative value, since Officer Haggerty himself found there was "no real basis to arrest" appellant and her associates. In contrast, the prejudice to appellant was substantial since the government used this evidence as a central part of its case. The court's error was not harmless.

Respectfully, I dissent.

### APPENDIX

Officer Haggerty testified as follows:

[PROSECUTOR]: And, during your observation of Ms. Page in the area of 14th and L Streets during the month of April, 1979, did you have occasion to see Ms. Page do anything unusual?

A. Yes, sir.

\* \* \* \* \* \*

On the northwest corner there was a car that had stopped for the traffic light there going southbound on 14th. It was one person in the car driving.

I observed Ms. Page and two other females get into the car and virtually surround the driver.

Q. Would you tell the ladies and gentlemen of the jury what you saw the three women do during this incident. When you say "virtually surround," what exactly were they doing?"

A. Two of the women got in the front seat and one of the women got in the back seat. The two women in the front seat were leaned over towards the driver and were basically around him. The woman in the back seat was over the back—over the seat—right over the seat, right over his shoulder, would have been his right shoulder.

\* \* \* \* \* \*

We went over to the car and we told the three women to get out of the car, and we also told the driver to get out of the car.

\* \* \* \* \* \*

Q. Now, did you have occasion to observe the driver look for his money after he had gotten out of the car?

A. Yes, sir.

Q. And, where did he look for his money?

A. He checked his pants pockets.

Q. And, did he find an money in them when he checked them?

A. No, sir.

Q. And, was money subsequently recovered in the car?

A. Yes, sir.

Q. And, who found that and where?

A. I did.

Q. Where was that money found?

A. The money was laying on the front seat, right where the driver was sitting. It was folded money and it was kind of like—partially, very partially, stuck in between the seat.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: Q. Would you say they touched him where his so-called vital organs may be?

A. Did I see them?

Q. Would you say that would be an area they might have touched him?

A. Yes, sir.

Q. All right. And, you went to the car and asked the man to get out, correct?

A. Yes, sir.

Q. And, you asked him, I believe, if he knew where his money was, correct?

A. Yes, sir.

Q. And he went like this? (Indicating) Would that be a correct characterization? He sort of looked around his body where his money might be?

A. He went into his pockets.

Q. And, he didn't find his money, did he?

A. No sir, he didn't.

Q. All right. And, then, you looked in the car and you saw the money on the seat, correct?

A. Yes, sir.

Q. And, prior to this, of course, you had seen these three women draped all over him, didn't you?

A. Yes, sir.

\* \* \* \* \* \*

Q. There was nothing to prevent you from arresting Ms. Page for assault with intent to commit robbery at that time, was there?

A. Only in respect whether we had a complainant or not, sir.

\* \* \* \* \* \*

[PROSECUTOR]: Q. Now, Mr. Slattery asked you about this case where the three women got into the car and asked you about the complainant. Why didn't you make an arrest in that case?

A. The complainant—the man driving the car was somewhat intoxicated. He was—he had been drinking. I couldn't say that he was drunk. He had been drinking. He didn't want to prosecute. He wasn't—he couldn't say positively that he had been robbed. There was really no real basis to arrest them.