Howard GROVES, aka Howard
Graves, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 84–937, 87–425.

District of Columbia Court of Appeals.

Argued Dec. 16, 1988.
Decided Sept. 19, 1989.

Mark Rochon, Public Defender Service, with whom James Klein and Page Kennedy, Public Defender Service, were on the brief, for appellant.

Roberto Iraola, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, U.S. Atty. at the time the brief was filed, and Helen M. Bollwerk and Thomas A. Zeno, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and MACK and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

In seeking reversal[1] of his convictions by a jury of murder in the second degree, D.C.Code § 22–2403 (1981), and carrying a pistol without a license, *id.* § 22–3204, appellant's principal contention is that the trial judge abused his discretion in admitting testimony about a shooting that occurred three days after the murder as other crime evidence relevant to identity and common scheme or plan under *Drew.*[2] He focuses particularly on the judge's finding that there was clear and convincing evidence that the other shooting had occurred, and the judge's refusals to consider the credibility of the witness to the other shooting and to permit appellant to cross examine the witness.[3] Although we agree that the evidence of the shooting was inadmissible to show common scheme or plan, we affirm, finding that the evidence was admissible to show identity and that appellant's other contentions do not require reversal of his convictions.

## I

On Thanksgiving Day morning, 1980, David Seaton was a passenger in Ernest Rich's pickup truck. They stopped for a red light at First Street and Michigan Avenue, N.W. A man in an automobile pulled up on the passenger side of the pickup truck and shot Seaton in the head, causing his death. The gunman fired a second shot as Rich drove away. Rich described the gunman as a thirty-five-year-old dark-complexioned black male with a mustache and the car as a black over white Buick Electra 225. He subsequently identified appellant as the murderer at a lineup.

Evelyn King, a crossing guard with the Metropolitan Police Department, saw the man in the car stick his hand out of the window of what she thought was an Electra 225 and fire a gun, hitting the passenger in the pickup truck. As the pickup truck took off, the gunman fired another shot. King was unable to identify appellant in a lineup, but identified him as the gunman in a still photograph of the lineup.

Media coverage of the Thanksgiving Day murder advised that the shooting was an unprovoked incident while the victim's vehicle was stopped at an intersection and that the gunman was a black male driving a black over white Buick Skylark, LeSabre or Electra 225. The police issued a public request for information.

Prior to trial the government moved to introduce evidence of two other armed assaults as *Drew* evidence relevant to motive, common scheme or plan, and the identity of Seaton's assailant. The first assault involved a November 6, 1980, incident near Iverson Mall around 4 p.m. where a black man in a black over white automobile with District of Columbia license tags, drove up beside a stopped car driven by a woman, pointed a large automatic handgun at her, and said "I'm going to kill you," but the woman drove off before the man could fire the weapon. The second assault occurred on November 30, 1980, around 12:00 a.m., near 14th Street and Constitution Avenue,

1. Appellant's appeals from his conviction and from the denial of his motion to dismiss the indictment or for a new trial pursuant to D.C. Code § 23–110 (1981) and Super.Ct.Crim.R. 33 were consolidated by order of this court.

2. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

3. Appellant also contends that the trial judge erred in refusing to impose sanctions for the destruction of Jencks material of a critical witness, and to order the government to disclose exculpatory reports regarding other alleged crimes similar to those with which appellant was charged. See Part III.

N.W., where, the government proffered, a black man in a black over white Cadillac car drove beside a stopped car and pointed a gun at the driver. The driver, Joseph Tito Statchuk, drove through the red light and heard two shots. Statchuk told the police that the license plate number of the gunman's car was District of Columbia 199–248 or 199–249. District of Columbia 199–248 was registered to a black over white Cadillac car owned by appellant. Statchuk identified appellant and another person at a lineup as looking like the gunman.

The trial judge ruled that only evidence of the second assault was admissible. The judge found that the victim's identification of appellant as the gunman in the first assault was equivocal. As to the second assault, the judge was presented with a defense proffer consisting of Statchuk's prior arrests and convictions, his prior psychiatric history, and letters in which he denied memory of the November 30 incident, as well as medical opinion that Statchuk was a pathological liar. Declining to evaluate Statchuk's credibility, the judge found that even if Statchuk was a pathological liar there was sufficient evidence that the shooting had occurred and that appellant was connected to it. The judge relied on the matching license tag number, the similarities in the way the shootings occurred, an arrest warrant for appellant in the Statchuk shooting and appellant's access to his girlfriend's black over white Buick Electra 225.

## II

Appellant contends that the government failed to prove by clear and convincing evidence that he was the perpetrator of the uncharged Statchuk shooting. Specifically, he assigns as error the trial judge's failure to weigh Statchuk's credibility at a hearing out of the jury's presence in which appellant could cross examine him, and the ad-

mission of the evidence under *Drew* to show identity and common scheme or plan.

■ In the absence of a final adjudication of guilt, the government must show by clear and convincing evidence that the other crime occurred and that the defendant is connected to it. *Light v. United States*, 360 A.2d 479, 480 (D.C.1976); *United States v. Bussey*, 139 U.S.App.D.C. 268, 273 & n. 23, 432 F.2d 1330, 1335 & n. 23 (1970). If the other crime is relevant to one of the *Drew* exceptions and its occurrence is established by clear and convincing evidence, then "it is generally conceded that the prejudicial effect may be outweighed by the probative value." *Drew, supra* note 2, 118 U.S.App.D.C. at 16, 331 F.2d at 90. The trial court still must independently determine in the exercise of its discretion whether the probative value of the other crime evidence outweighs its prejudicial impact. *Ali v. United States*, 520 A.2d 306, 310 (D.C.1987). We review the trial court's decision to admit other crimes evidence for abuse of discretion.[4]

### A.

This jurisdiction has long adhered to the presumptive inadmissibility rule for other crimes evidence on the basis that "the jury may condemn the defendant because of his prior criminal behavior and not because he is guilty of the offense charged." *Thompson v. United States*, 546 A.2d 414, 419 (D.C.1988) (citing RICHARDSON ON EVIDENCE § 175, at 158 (1964)). Once such evidence is before the jury it is difficult, if not at times practically impossible, to avoid its use as predisposition evidence. *Thompson* at 425 (citing *Ali, supra,* 520 A.2d at 310); *Drew, supra* note 2, 118 U.S.App.D.C. at 15, 331 F.2d at 89; 1 WIGMORE, EVIDENCE § 194, at 158 (1968); *see also Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948) (such evidence likely to weigh too much with jury

---

4. *Bartley v. United States*, 530 A.2d 692, 695 (D.C.1987); *German v. United States*, 525 A.2d 596, 607 (D.C.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); *Minick v. United States*, 506 A.2d 1115, 1119 (D.C.), *cert. denied*, 479 U.S. 836, 107 S.Ct. 133, 93 L.Ed.2d 76

(1986); *Gates v. United States*, 481 A.2d 120, 123 (D.C.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985); *United States v. Bobbitt*, 146 U.S.App.D.C. 224, 228, 450 F.2d 685, 689 (1971).

and over persuade). Consequently, the trial judge is directed to apply "[a] jaundiced eye to devastatingly prejudicial evidence." *Thompson, supra,* 546 A.2d at 424.

Because of the inherent prejudice of other crimes evidence, the trial judge must make a series of factual determinations before admitting the evidence to ensure that the defendant's right to a fair trial is not undermined. *Id.* at 419–20. In *Thompson,* the court also emphasized the importance of the time at which the trial judge makes these determinations. *Id.* at 423–24. To this extent, the trial judge exerts total control over whether such evidence will be heard by the jury, when the evidence will be heard by the jury, and for what limited purpose it may be considered by the jury. The threshold inquiry of any of these determinations is whether there is clear and convincing evidence that the other crime occurred and that the defendant is connected to it. Unless the judge as a trier-of-fact finds such clear and convincing evidence, the admissibility inquiry comes to a halt.[5]

 In the instant case, the trial judge declined to consider Statchuk's credibility on the ground that the appropriate standard was that governing a motion for judgment of acquittal at the close of the evidence.[6] This court has held that the trial judge may consider credibility when required to make factual findings in suppression hearings. *See, e.g., Hill v. United*

*States,* 512 A.2d 269, 278 (D.C.1986); *see also United States v. Jackson,* 450 A.2d 419, 424 (D.C.1982); *Wheeler v. United States,* 300 A.2d 713, 716 (D.C.1973); *Ruffin v. United States,* 293 A.2d 477, 479 (D.C.1972). Given the central role of the trial judge in determining whether to admit other crimes evidence, there appears no basis on which to apply a different analysis to the judge's role in determining the admissibility of *Drew* evidence. The acquittal standard is only applicable after evidence has been determined to be admissible, and the trial judge erred in applying that standard in assessing the proffers before it.

 Therefore, if the trial judge had determined that Statchuk's credibility was completely suspect, then it would have been logically impossible for the judge to find clear and convincing evidence that the Statchuk shooting occurred based solely on his proffered testimony. However, there was sufficient, other probative evidence on which the trial judge could properly base a finding that the Statchuk shooting occurred.[7] The judge heard a detailed proffer from the government and a detailed proffer of Statchuk's prior arrests and convictions, psychiatric history and unreliability.[8] The judge relied on Statchuk's identification of a black over white automobile with a license number that was registered in appellant's name, observing that it was highly unlikely that Statchuk "would have

---

**5.** This is not the only rule or policy that can be applied to the admission of other crimes evidence. *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) (*re* FED.R.EVID. 404(b)), in which the Court relied on the language of Rule 404(b) and evidence of Congress' intent as well as other federal rules of evidence to protect against prejudice to the defendant. Of course, Rule 404(b)'s policy of presumed admissibility differs significantly from this court's approach to the admission of other crimes evidence.

**6.** In ruling on a motion for judgment of acquittal pursuant to Super.Ct.Crim.R. 29, the trial judge must "view[ ] the evidence in the light most favorable to the government, 'giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact.'" *United States v. Covington,* 459 A.2d 1067, 1070–71 (D.C.1983) (quoting *United States v. Hubbard,* 429 A.2d 1334, 1337–

38, *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981).

**7.** We review the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences. *In re Q.L.J.,* 458 A.2d 30, 32 (D.C.1982) (citing *Blackledge v. United States,* 447 A.2d 46, 49 (D.C.1982)); *see also In re E.G.C.,* 373 A.2d 903, 906 (D.C.1977) (citing *Richardson v. United States,* 366 A.2d 433 (D.C.1976)); *Crawford v. United States,* 126 U.S.App.D.C. 156, 375 F.2d 332 (1967).

**8.** *See, e.g., Willcher v. United States,* 408 A.2d 67, 74 & n. 7, 77 & n. 12 (D.C.1979) (trial court determined probativity of evidence based on government's proffer); *see Page v. United States,* 438 A.2d 195, 196 (D.C.1981) (trial court allowed cross-examination of government witness' proffered testimony).

concocted something like that" when he did not even know appellant. The defense proffer of impeachment evidence, although substantial, did not directly undermine the government's proffer about the shooting and how Statchuk obtained the license plate number.[9] The judge also noted that a warrant had been prepared for appellant's arrest for the Statchuk shooting, that appellant had access to an Electra 225, the car described in the Thanksgiving Day murder, and that appellant had been identified by Statchuk at a lineup. Neither the absence of physical evidence and other eyewitnesses, nor the fact that appellant was never brought to trial for the Statchuk shooting is dispositive. *See Page v. United States*, 438 A.2d 195, 197–98 (D.C.1981).

Accordingly, notwithstanding the judge's misstatement of the proper standard for admissibility, the error is not "of a magnitude to require reversal," *see generally Johnson v. United States*, 398 A.2d 354, 366 (D.C.1979) (trial court discretion), since other competent evidence clearly established that the Statchuk shooting occurred. Further, since the defense did not proffer to the trial judge, and does not contend on appeal, that cross-examination would have revealed how Statchuk could have identified appellant's car and license plate number unless the shooting had occurred or that cross-examination would have shed any new light on Statchuk's credibility, *cf. Brown v. United States*, 409 A.2d 1093, 1099 (D.C.1979), and the defense had a full opportunity to present its impeachment proffer to the trial judge before he made his admissibility ruling and to the jury during Statchuk's cross-examination,[10] we find no abuse of discretion by the trial judge in

refusing to allow the defense to cross-examine Statchuk out of the jury's presence. *See generally Hemsley v. United States*, 353 A.2d 14, 16 (D.C.1976).

### B.

Appellant also contends that the trial judge abused his discretion in admitting evidence of the Statchuk shooting to show identity. Although the identity exception contemplated by *Drew* requires that "'the device used must be so unusual and distinctive as to be like a signature,'" 118 U.S. App.D.C. at 16 n. 11, 331 F.2d at 90 n. 11 (citing McCORMICK, EVIDENCE § 157), this court examines whether "there are enough points of similarity in the combination of circumstances surrounding the two crimes to create a reasonable probability that the same person committed each." *Byrd v. United States*, 551 A.2d 96 (D.C.1988) (quoting *Easton v. United States*, 533 A.2d 904, 908 (D.C.1987)). *See also Gates, supra* note 4, 481 A.2d at 123; *Warren v. United States*, 436 A.2d 821, 833 (D.C. 1981). We find no abuse of discretion.

The Seaton and Statchuk shootings involved senseless shootings from one motor vehicle to another without provocation or apparent motivation. In each shooting a lone assailant drove along side a vehicle standing at an intersection for a red light, stopped, fired a gun two times and immediately drove away. The gunman in each shooting was a middle-aged dark-complexioned black male with a medium bush haircut. Although there were differences in the race of the victims and types of vehicle in which they were sitting, both victims were unsuspecting occupants in automo-

---

9. Appellant does not contend that Statchuk's proffered testimony was inherently incredible. *Cf. Coleman v. United States*, 515 A.2d 439, 444 (D.C.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987); *In re A.H.B.*, 491 A.2d 490, 496 n. 8 (D.C.1985).

10. Appellant's reliance on *United States v. Cyphers*, 553 F.2d 1064 (7th Cir.), *cert. denied*, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977), is misplaced. The court did not purport to establish the means by which the district court must conduct the preliminary hearing, but simply re-

viewed the character of the other crimes evidence to determine whether a sufficient factual basis existed to meet the clear and convincing standard. In a recent decision upon which appellant also relies, the same court expressly deferred to the district court on the manner in which to conduct the other crimes pre-admission inquiry. *United States v. Leight*, 818 F.2d 1297, 1304 (7th Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987) (citing *United States v. Foskey*, 204 U.S.App.D.C. 245, 254 n. 8, 636 F.2d 517, 526 n. 8 (1980)).

biles.[11] There is no evidence that the shootings were racially motivated or crime related (i.e., drug related, robbery motivated, etc.) or victim related, and the fact that Seaton was only fifteen years of age while Statchuk was an adult hardly makes them any less unsuspecting victims. Also, since appellant was connected to the two cars which the gunman was driving, the fact that the victims were in different kinds of cars still does not detract from the similarity between the modus operandi of the two shootings. Moreover, each shooting occurred when traffic was light and witnesses would be unlikely—the Seaton murder occurred at 9:00 in the morning on Thanksgiving Day and the Statchuk shooting occurred at midnight on a Saturday night in the downtown business and federal office building section of the city [12]—and occurred within three days and a three-mile radius of each other.[13]

Ironically, it is the license plate number used in the "other crime," a fact not distinctive as to the charged crime but directly tied to appellant, that almost conclusively proves identity as to the other crime. Hence, Statchuk's credibility is so critical and the other crime evidence is both very prejudicial and very probative. Still, under the unusual circumstances of this case, we conclude the trial judge could reasonably conclude that the other crime evidence was more probative than prejudicial and that that there was a "reasonable probability that the person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed." *Drew, supra* note 2, 118 U.S.App.D.C. at 16, 331 F.2d at 90; *see also Bowyer, supra* note 11, 422 A.2d at 977.

Appellant further argues, and the government concedes, that the other crime evidence did not fit within the common scheme or plan exception. We agree, *see Ali, supra,* 520 A.2d at 306, but hold that the error was harmless. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Bartley, supra* note 4, 530 A.2d at 695; *Pounds v. United States,* 529 A.2d 791, 794–95 (D.C. 1987). *See Calaway v. United States,* 408 A.2d 1220, 1227 n. 12 (D.C.1979). We are unpersuaded by appellant's argument that the prosecutor was able to present arguments to the jury under the common scheme or plan exception that he could not make under the identity exception which substantially prejudiced him. As appellant recognizes, the prosecutor's focus was on "randomless" as a single point of similarity sufficient to show who killed Seaton, and review of entire argument makes clear that the prosecutor's focus was on identity.

11. *Cf. Bowyer v. United States,* 422 A.2d 973, 975 (D.C.1980) (five victims were all prostitutes); *Samuels, supra* note 12, 385 A.2d at 19 (both armed robbery victims were cab drivers in their cabs).

12. *Cf. Bowyer, supra* note 11, 422 A.2d at 975 (D.C.1980) (five sexual assaults occurred in the early hours of the morning); *Bridges v. United States,* 381 A.2d 1073, 1078 (D.C.1977), *cert. denied,* 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978) (four rapes occurred between 1 a.m. and 4:45 a.m.).
 The government also argues that both cars were black over white. *Cf. Arnold v. United States,* 358 A.2d 335, 338 (D.C.1976) (en banc) (rapist drove a light blue Volkswagen in two separate rapes); *Bowyer, supra* note 11, 422 A.2d at 975 (five rapes similar in which the victims lured or abducted into a dark blue car). In fact, different cars were used in the two shootings: a Buick and a Cadillac. Accordingly, both cars had the same color scheme is simple coincidence for identity purposes.

13. *See Samuels v. United States,* 385 A.2d 16, 17–18 (D.C.1978) (two armed robberies occurred seven hours apart on the same day); *Bridges, supra* note 12, 381 A.2d at 1078 (four rapes committed within a six-month period of time and two of the incidents occurred within a few days of one another). *See also Bowyer,* note 11, 422 A.2d at 975 (five sexual assaults occurred in secluded areas of 14th Street corridor precisely because the victims were street prostitutes); *Bridges, supra* note 12, 381 A.2d at 1078 (four rapes occurred in the same general area, and three of them within a three-block area, because the rapist lived in the neighborhood and was on foot). Although these cases have involved a smaller geographical area, they illustrate that the degree of geographical proximity necessary to establish similarity between crimes is a function of the nature of the crimes. Thus, random shootings from one vehicle to another vehicle could well encompass a larger geographic area than where offenses are committed by perpetrators on foot.

### III

We find no merit to appellant's other contentions.

■ The trial judge did not abuse his discretion in failing to strike Statchuk's testimony as a sanction for the government's erasure of the tape recording of Statchuk's telephone call to the police about the November 30 shooting. *Jones v. United States*, 535 A.2d 409, 411 (D.C. 1987) (citing *Montgomery v. United States*, 384 A.2d 655, 662 (D.C.1978)). There is no evidence of bad faith by the government in the erasure of the tape, which occurred in accordance with routine administrative procedures after a sixty-day period. *See Gibson v. United States*, 536 A.2d 78, 84 (D.C. 1987); *Bartley, supra* note 4, 530 A.2d at 697. But even if the police were negligent in not immediately preserving the recording, Jencks Act sanctions are not mandated, especially where the risk of prejudice to the defendant is, as here, slight, *see Fields v. United States*, 368 A.2d 537, 541 (D.C. 1977); *United States v. Perry*, 153 U.S. App.D.C. 89, 100, 471 F.2d 1057, 1068 (1972), in light of the four substitute documents for the recording.[14] The radio run confirms that Statchuk gave the car description and license plate number to the police minutes after calling the police. Hence, even if Statchuk had not initially provided this information to the police in his telephone call, the impeachment value of this fact was dubious since he supplied the same information to police minutes later. *Gibson, supra,* 536 A.2d at 84; *see also Bartley, supra* note 4, 530 A.2d at 697; *Montgomery, supra,* 384 A.2d at 662–63. Additionally, appellant made exhaustive use of substantial impeachment material in cross-examining Statchuk, and the evidence against appellant was not insubstantial, two eye-witnesses to the Thanksgiving Day murder identifying him as the gunman and a type of car to which appellant had access and had used on prior occasions.

■ The trial judge also did not err in denying appellant's motion to dismiss the indictment or for a new trial on the ground that he was denied, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), reports of four other car-to-car shootings. Assuming a defensive use of *Drew* is permitted,[15] the four incidents are insufficiently similar to the Thanksgiving Day murder to be admitted as relevant evidence. Two incidents did not involve shootings but merely someone pointing a gun, and the two incidents in which shots were fired involved shots from a passing automobile and no evidence is available on the description of either the gunman or the car. The fact of a car-to-car shooting alone is inadequate to establish similarity between the crimes. The Statchuk shooting was more probative than these four incidents because, in addition to the similar modus operandi and the descriptions of the gunman, the government proved appellant's ownership of the Cadillac used in the Statchuk shooting and his access to a Buick Electra 225, the type of car used in the Thanksgiving Day murder. Accordingly, assuming the evidence of the other four reported incidents was relevant, there is not "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v.*

---

14. The police provided appellant with (1) the printout of the 911 call; (2) the radio transmission to the police field units from the dispatcher who received Statchuk's call; (3) the police report (PD 251) prepared by Officer Rooney; and (4) a detailed statement Statchuk gave to the police less than ninety minutes after the shooting.

15. This court has not decided whether a defendant may offer evidence of other similar crimes committed by someone else to establish his innocence. *Gates, supra* note 4, 481 A.2d at 125. A number of jurisdictions allow defensive use of *Drew* evidence. *See, e.g., Holt v. United States*,

342 F.2d 163 (5th Cir.1965); *People v. Flowers,* 644 P.2d 916, 919 (Colo.) (en banc), *appeal dismissed,* 459 U.S. 803, 103 S.Ct. 25, 74 L.Ed.2d 41 (1982); *Commonwealth v. Jewett,* 392 Mass. 558, 562–64, 467 N.E.2d 155, 158–59 (1984); *State v. Edwards,* 380 N.W.2d 503, 509 (Minn.Ct.App. 1986); *State v. Garfole,* 76 N.J. 445, 452–56, 388 A.2d 587, 591–92 (1978); *State v. Cotton,* 318 N.C. 663, 665–67, 351 S.E.2d 277, 279 (1987). We have no occasion to decide this issue since the four incidents cited by appellant are not sufficiently similar to the Thanksgiving Day murder to be admitted in a defensive use of *Drew.*

*Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Nor was the government required to release a composite based on leads obtained during the police investigation of the Thanksgiving Day murder since the information was not obtained from witnesses to either the Thanksgiving Day murder or Statchuk shooting and, thus, the composite is not material to the issue of appellant's guilt and did not constitute *Brady* information. *See Moore v. Illinois,* 408 U.S. 786, 795–96, 92 S.Ct. 2562, 2568–69, 33 L.Ed.2d 706 (1972); *see generally United States v. Sedgwick,* 345 A.2d 465, 473–74 (D.C.), *application denied,* 423 U.S. 1028, 96 S.Ct. 558, 46 L.Ed.2d 402 (1975), *cert. denied,* 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976).[16]

*Affirmed.*

---

**16.** Appellant also based his motion to vacate his conviction and for a new trial on Statchuk's recantation of his trial testimony after the jury returned its verdict. He does not contend on appeal that the trial judge erred in not granting the motion based on the recantation.