Gary P. LIGHT, Appellant,

v.

UNITED STATES, Appellee.

No. 9514.

District of Columbia Court of Appeals.

Argued Nov. 18, 1975.

Decided July 23, 1976.

James E. Drew, Washington, D.C., for appellant.

Bernard J. Panetta, II, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and Theodore A. Shmanda, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

Appellant Light, a mail clerk/driver for the Federal Environmental Protection Agency (EPA), was charged in a one count indictment with unauthorized use of a motor vehicle [1] stemming from his use of a government motor pool car for personal purposes on September 26, 1974. After trial by jury appellant was convicted and

1. D.C.Code 1973, § 22-2204.

sentenced to one year of supervised probation.

This case had its genesis in mid-September 1974 when Robert Sheridan, one of appellant's co-workers, reported to the EPA car pool attendant that the odometer on the car he had been using registered more mileage in the morning than it had at the close of work the previous day.[2] Pursuant to this report, a surveillance of the vehicle was undertaken. On the evening of September 25th, the car was reported missing, and at 8:05 the next morning appellant drove it into the EPA car pool. Upon being questioned by a waiting security guard, appellant denied any previous use of the car and said that on this occasion he had done so because his own assigned car had been low on gas. The security unit then contacted the Metropolitan Police Department and appellant was arrested and charged.

■ On this appeal, appellant assigns as error the trial court's admission into evidence of testimony and documents referring to at least five occasions, prior to the instant one, wherein the vehicle's odometer readings registered discrepancies indicating after-hours use. Appellant contends that the use of the five prior instances of car misuse, which have not been adjudicated, nor connected through evidence with him, was unduly prejudicial to his case. We agree.

■ It is the law of this jurisdiction that evidence of other crimes (whether fully adjudicated as such or not), which are wholly independent of the one charged, is inadmissable unless it comes under one of the well-defined exceptions. *Robinson v. United States,* D.C.App., 317 A.2d 508, 513 (1974); *United States v. Bobbitt,* 146 U.S.App.D.C. 224, 450 F.2d 685 (1971); *United States v. Bussey,* 139 U.S.App.D.C. 268, 432 F.2d 1330 (1970); *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). Even where such evidence might fall within the scope of one of the exceptions, the trial court, in exercising its broad discretion over the admission of evidence, must weigh the probative value of the evidence against the degree of prejudice occasioned by its admission. *Robinson v. United States, supra; United States v. Fench,* 152 U.S.App.D.C. 325, 470 F.2d 1234 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). *See also* McCormick, Evidence § 190 (2d ed. 1972).

■ The evidence in this case does not appear to fit into any of the categories in which "other crimes" evidence has been recognized as having independent relevancy. *See* McCormick, *supra.* As soon as defense counsel became aware of the government's intention to produce evidence of prior car misuse, he objected that this would permit the jury to assume there were other crimes, that this would place an unfair burden on the defendant, that there was no evidence connecting the defendant with such misuse, and that the evidence was irrelevant and confusing. The government did not suggest that the evidence would constitute an exception to the rule making other crimes inadmissible, but merely stated that it wished to use the evidence as background material to show how appellant was caught on September 26th. Since appellant's arrest was not then in issue, this was hardly relevant or necessary.[3]

2. It was established at trial that the EPA drivers were required to keep daily utilization reports for each time a vehicle was used. When a driver came to work in the morning he would check the car keys out and make out a report as to how much mileage was on the odometer. At the end of the day before the driver returned the keys, he was again to record the mileage registered on the odometer.

3. Indeed in view of the fact that appellant's use of the car on the 26th was undisputed (the defense being that of authorization) it is difficult to think of any permissible probative value that the evidence of prior car misuses could have contributed. This is particularly true since this evidence was not in any way connected with appellant and since two other drivers testified that they had kept cars over-

Moreover, assuming that the offered evidence was relevant, the government went far beyond "background" in its pursuit of the other crimes relationship. Thus, time and time again the government brought up the subject of the other five instances in which the car's odometer registered discrepancies. It introduced into evidence the daily utilization reports showing the discrepancies; questioned Mr. Sheridan as to each one; repeatedly questioned appellant as to whether he had driven the car on the other occasions, and argued the other instances to the jury in its closing statement by saying "[i]t's up to you to decide whether . . . it was the beginning of the end . . . for Mr. Light's unauthorized use of that vehicle when he was finally caught on the 26th." Allowing such use of the evidence was error.

A full reading of the trial transcript shows not only that the other crimes evidence permeated the trial, but that the prejudicial effect far outweighed the probative value. *See United States v. Bussey, supra* at 272, 432 F.2d at 1334. The effect of the extensive use of the other crimes was to paint a picture of appellant constantly misusing the government vehicle until he was curtailed by the fruitful surveillance which brought the indictment. Appellant was on trial for one offense and was in no position to defend against other unprosecuted crimes. *See Hansford v. United States,* 112 U.S.App.D.C. 359, 366, 303 F.2d 219, 226 (1962). There were, moreover, no limiting cautionary instructions given to the jury, in reference to the use to be made of such evidence. It cannot be said "that the error did not influence the jury . . . ." *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

*Reversed and remanded for a new trial.*

night on numerous occasions (although denying use for personal reasons).

There is authority that, where the evidence involves an alleged crime not reduced to judgment, there must be "clear and convincing

YEAGLEY, Associate Judge (dissenting):

Since, in my view, the trial court correctly admitted the now disputed evidence, I must dissent. Secondly, even if one should conclude otherwise, the appellant has not preserved an objection to its admissibility.

The events leading to appellant's arrest began when certain unexplained mileage was noted on the odometer of an agency automobile. Consequently the car was put under surveillance and on the evening of September 25th was discovered missing after hours. The following morning the appellant was seen as he returned the car to the garage. Appellant admitted, on being apprehended, that he did not have authority to use the vehicle but said he had been forced to use it because his own agency automobile was running low on fuel.

At the conclusion of the government's opening statement, which referred to the foregoing circumstances, defense counsel stated he would object if evidence relating to the prior misuse of the vehicle was presented "in a manner which the jury can assume there were other crimes committed and that the car was taken unauthorized." The government countered that "the jury is entitled to hear the background as to why the car was placed under surveillance . . . ." The court indicated it was part of the case and it would admit the evidence, but it would not admit evidence that would be confusing. During the trial when official reports regarding the daily utilization of the cars were offered in evidence the defense objected only to certain extraneous data appearing in them. Once the material was removed defense counsel said, "I have no objection". Indeed, the

evidence," adduced in an initial inquiry, that the defendant is connected with the other crimes before the jury should be permitted to hear the evidence. *United States v. Bussey, supra* at 273, 432 F.2d at 1335 (1970).

defense had no grounds for an objection to such records. Although they might have presented a basis for investigation they did not constitute evidence of a crime. Neither do I find that an objection was made later when testimony was offered and admitted regarding the unexplained overnight mileage found on the odometers of some cars. Again counsel quite likely failed to object for the very good reason that it did not constitute evidence of a crime and was otherwise relevant. The fact that the defense found no basis for objecting to the admissibility of this evidence is borne out by its motion for a new trial which did not question its relevance.

The unusual nature of these events warranted the trial court allowing the prosecution to explain the reasons why security officials were paying particular attention to the automobile appellant was later accused of misusing. Proof of the prior misuse of the vehicle was necessary to place the appellant's arrest in the context of its surrounding events. It was proper background data and part of the *res gestae,* even though the defendant later in the trial admitted in his testimony to using the car on other occasions.

Even assuming that such limited evidence showed that defendant committed other crimes, it was nonetheless admissible. The courts have recognized innumerable exceptions to the rule that excludes evidence of other crimes and have uniformly upheld the use of such evidence where it was offered for some relevant purpose such as to show a continuing plan or scheme, or to show intent, or that the event was not accidental, or as part of the *res gestae* to fill out the background of the

crime by proving the immediate context of related happenings near in time and place.[1] When relevant, the evidence may be admitted in the discretion of the trial judge, if he finds its probative value is not substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice. *United States v. Stirone,* 262 F.2d 571, 576 (3d Cir. 1958), *rev'd on other grounds,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The majority opinion relies on the general rule of exclusion.[2] However, the instances of exceptions to the general rule of exclusion are so numerous that the exception seems to have become the rule.[3] Consequently, the Third Circuit has rephrased the rule as follows: "Evidence of other offenses may be received *if relevant for any purpose* other than to show a mere propensity or disposition on the part of the defendant to commit the crime." *United States v. Stirone, supra* (emphasis added). That court observed further that "the range of relevancy . . . is almost infinite", citing McCormick on Evidence § 127 (1954). *See also United States v. Prince,* 264 F.2d 850 (3d Cir. 1959). The evidence in the instant case being relevant background was properly admitted as part of the *res gestae.*[4]

In one case relied on in the majority opinion, the court after stating the general rule found the evidence was relevant and affirmed the trial court's ruling that the evidence was admissible as an exception to the rule. *Robinson v. United States,* D.C. App., 317 A.2d 508, 513 (1974). In another, the evidence was ruled as properly admitted as to motive when elicited from the defendant on cross-examination. *United*

---

1. McCormick on Evidence § 190, at 447–51 (2d ed. 1972, listing ten exceptions but noting it is an incomplete list). *See also* 2 J. Wigmore, Evidence § 301 *et seq.,* §§ 310, 324, 338 and 341 (3d ed. 1940), and cases cited therein.

2. Although the majority opinion criticizes the admission of the evidence as constituting evidence of a crime, it complains on the other

hand that the prosecution failed to connect the prior misuses of the vehicle to appellant.

3. *See* authorities in note 1, *supra.*

4. *Id.; Price v. District of Columbia,* D.C. Mun.App., 54 A.2d 142 (1947). *See also Arizona v. Villavicencio,* 95 Ariz. 199, 388 P.2d 245 (1964), calling it "the complete story principle" rather than *res gestae.*

*States v. Bobbitt,* 146 U.S.App.D.C. 224, 450 F.2d 685 (1971). Two other cases cited by the majority involved the admissibility, in each instance, of the details of a second and independent holdup committed by the defendant. Such evidence being inflammatory is not comparable to the circumstances here where the disputed evidence was merely that one of the cars was accumulating unexplained overnight mileage. This evidence was not only not inflammatory but was relevant to explain why the use of the car was being watched. The government is permitted to place the circumstances of a crime in context with background information and is not required to present its case in a vacuum.

In a decision in this jurisdiction where the prosecution was allowed to introduce hearsay testimony that there had been a series of holdups previously at the same service station it was held that reversal was not warranted where there had been no objection to the testimony of the other crimes and the evidence was relevant to explain the reason for a stakeout. *George v. United States,* 75 U.S.App.D.C. 197, 200, 125 F.2d 559, 562 (1942).

Our predecessor court said of the general rule: "But there are exceptions, and the evidence is admissible when the acts are so blended or connected with the one on trial that the proof of one incidentally involves the other, or they explain the circumstances of the offenses charged, or tend to logically prove any element of the offense." *McDonald v. United States,* D.C.Mun.App., 183 A.2d 396, 397 (1962). To a similar effect are *United States v. Bobbitt, supra; United States v. Jones,* 438 F.2d 461 (7th Cir. 1971); *United States v. Turner,* 423 F.2d 481 (7th Cir.), *cert. denied,* 398 U.S. 967, 90 S.Ct. 2183, 26 L.Ed.2d 552 (1970); *United States v. Restrepo,* 417 F.2d 927 (5th Cir. 1969).

Even if, as the majority contends, the evidence was excludable, the appellant neither objected to its admission nor did he ask for a cautionary instruction. Trial errors must be objected to at the time they occur if they are to be considered on appeal. *Adams v. United States,* D.C.App., 302 A.2d 232, 234 (1973); *Wooten v. United States,* D.C.App., 285 A.2d 308, 309 n.3 (1971); *Bunter v. United States,* D.C. App., 245 A.2d 839, 841 (1968). The power of this court to notice unobjected to trial defects is discretionary and is limited to those affecting substantial rights. It has long been held in this jurisdiction that "'[a]bsent a clear showing of prejudice, we are not disposed to notice alleged errors which are raised for the first time on appeal.'" *Hill v. United States,* D.C.App., 280 A.2d 925, 926 (1971) (citation omitted). *See Adams v. United States, supra* at 234.

It seems clear the the trial court did not err, nor were the "substantial rights" of the appellant affected by any alleged error. Accordingly I respectfully dissent.