**Charles A. LEWIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 87–274.**

District of Columbia Court of Appeals.

Submitted July 18, 1989.
Decided Dec. 29, 1989.

John T. Fowler, appointed by this court, was on the brief for appellant.

Patricia A. Riley, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, were on the brief for appellee.

Before NEWMAN,* STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

Appellant Lewis appeals from his conviction for carrying a dangerous weapon (a buck knife) in violation of D.C.Code § 22-3204 (1989).[1] His two principal arguments on appeal concern the trial court's handling of a problem with one juror (who

---

* Associate Judge NEWMAN concurs in the result only.

1. D.C.Code § 22-3204 (1989) prohibits the "carrying [of] concealed weapons," stating, in relevant part, "No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license ... or any deadly or dangerous weapon capable of being so concealed."

The phrase "buck knife" was that used at trial. The particular knife in question had a four-inch blade and could be opened and closed.

herself displayed a knife) and the admission of asserted *Drew*[2] evidence. We affirm.

This case involves an altercation occurring on August 4, 1986 between appellant and Kenneth Smith. A police officer driving by stopped to investigate. The officer testified that he saw two men, appellant and Smith, standing in front of 705 4th Street N.W., and that each of them had an object in his hand. As the two were struggling with what appeared to be a pipe (but which turned out to be Smith's homemade shotgun), the buck knife held by appellant flew out of his hand and onto the sidewalk. Both men were arrested, with Smith subsequently entering a plea of guilty to the charge of carrying a dangerous weapon.

Appellant testified that he did not remove the knife from his pocket to protect himself, nor did he display it when Smith was approaching him; he suggested that the knife must have fallen out of his pocket when the two men were tussling. According to appellant, he carried a knife because he needed it for his work at a florist shop.

## I

First, appellant contends that the trial court committed reversible error in handling an incident involving the jury. We disagree. What occurred is as follows: one of the members of the jury (Juror 617) sent a note to the judge stating that he was concerned about something that had transpired in the jury room. The trial judge conferred with counsel for both sides, and it was agreed by all that he would first speak to the juror alone to ascertain the nature of the problem. After hearing from Juror 617, the trial judge summoned counsel, and then, with everyone present, the juror repeated his story almost word for word. He stated that during a break in the trial, one of the other jurors had remarked that she carried a little knife and that she

had pulled a Swiss army knife out of her purse and displayed it.

Counsel ventured their respective proposals for how to deal with the situation. Defense counsel suggested that nothing be done, remarking "If we do something to highlight that particular juror, I think we're sending a dangerous message to the jury."[3] The government, on the other hand, urged the court to excuse the juror with the knife. Instead, the trial court proposed a solution that would take care of the concerns of both sides—the juror with the knife would be removed from deliberations, but in such a way as to avoid sending any kind of a message to the jury. This could be done by learning from Juror 617 which juror was the one with the knife, telling Juror 617 that the juror with the knife was, by coincidence, an alternate, and then discharging the juror just before deliberations.

Defense counsel agreed that the trial court's proposal would solve the problem, but argued that another problem would be created in that he would be deprived of the original twelve jurors upon whom he had agreed. Appellant does not renew this argument here, but rather argues that 1) "it was totally improper for the court to have addressed the juror [617] outside the presence of the parties" and 2) "a voir dire should have been conducted and/or a mistrial declared." Neither point was properly preserved for appeal, since, as noted, defense counsel expressly agreed that the court should address the juror alone first, and since defense counsel never moved to poll the entire jury about the incident (understandably since counsel's expressed concern was that the incident be minimized so as to avoid "sending a dangerous message to the jury").

In any event, whatever error there may have been by the court's *ex parte* communication with Juror 617, it was harmless.

---

**2.** *Drew v. United States,* 118 U.S. App.D.C. 11, 331 F.2d 85 (1964).

**3.** Appellant's trial counsel apparently feared that by admonishing or striking from the jury the juror with the knife, the trial court would be intimating that it is wrong to carry a knife.

Counsel argued, "if we were to use one of these jurors to identify the woman that carried the knife and then have her struck from the panel, I think that's going to send a message to the other jurors that, no, she's wrong, it's not okay to carry a knife."

The communication was brief, and its substance was repeated virtually verbatim after the parties had reassembled. *See Johnson v. United States*, 544 A.2d 270, 273 (D.C.1988) (a facially benign error in communicating with a juror *ex parte* is harmless beyond a reasonable doubt). We also cannot say that the trial court abused its discretion in failing *sua sponte* to voir dire the entire jury, particularly since such a voir dire might well have served to create the very prejudice to appellant of which he was concerned at trial.

## II

Appellant's other principal contention is that the trial court erred in admitting prior bad act testimony. The "prior bad act" referred to was an altercation between appellant and Smith which had occurred two days before the altercation involved in the instant case. Appellant had allegedly brandished his knife at Smith during this earlier dispute. After an extensive colloquy, the trial court determined that it would allow testimony concerning this incident (the "August 2 incident") only by way of rebuttal, that is, that the evidence would not be admitted unless appellant put his purpose in carrying the knife into issue.[4] After appellant took the stand and stated that he carried the knife because he needed it for his work at the florist's, the government did in fact introduce Smith's testimony about the August 2 incident. Appellant protests the admission of the evidence on the grounds that it was not disclosed until the day of trial, that it was not within any

of the established *Drew*[5] exceptions, and that the trial court admitted the evidence without first finding that the prior incident was established by clear and convincing evidence. We do not find reversible error in any of these three contentions.

### A.

■ First, the trial court correctly noted that there exists no specific rule mandating that the government provide advance notice of its intention to introduce *Drew* evidence.[6] Here the government did not make known its intention to introduce evidence of the August 2 incident until after the jury had been sworn. In considering whether the government should have been precluded from using the evidence, the trial court noted that:

[A] number of judges do require advance disclosure as a matter of their own calendar and practice. I think it would have been a better practice. And I think that in a case where the Government doesn't, then it runs some risk that a defendant may be able to make a sufficiently strong showing from the lack of any advance disclosure that a Court would be persuaded that the prejudicial effect far outweighs the probative effect, and exclude it. In this case, I am not going to do that.

The trial court's determination not to exclude use of the evidence was no abuse of discretion. The trial court explained its ruling in part by noting that during a hearing held some five months before trial,[7]

---

4. Appellant's purpose in carrying the knife was a material issue in the case. As the trial court instructed the jury, "in order for the defendant to be convicted of the offense with which he is charged here, that is to say, carrying a deadly or dangerous weapon on August 4, 1986, one of the things the Government must prove to you beyond a reasonable doubt is that the defendant was carrying this knife on August 4, 1986, and that the purpose of carrying the knife was its use as a deadly or dangerous weapon...."

5. Since the government, as well as appellant, has characterized this evidence as *Drew* evidence, we make that assumption and invoke the standard line of analysis established in that case and its progeny in assessing the admission of the evidence of the August 2 incident.

6. Even assuming that Super.Ct.Crim.R. 12(c)(1) (1989), relied on by appellant, applies to *Drew* evidence (a point which the government disputes), the rule expressly provides that advance notice is "[a]t the discretion of the government."

7. Status hearings in appellant's and Smith's cases were scheduled to be handled together before Judge Dixon on August 26, 1986. Appellant's trial counsel later explained to the trial judge: "Mr. Smith's plea was continued until the latter part of the afternoon. I was in trial that day. I had hoped to be there at the plea because I was interested in hearing what Mr. Smith had to say, but I was unable to do so." As the trial court noted, a transcript of that open hearing could have been obtained by de-

Smith had "laid out in considerable detail exactly what the Government now seeks to offer," and that therefore, since appellant "had an opportunity to find out in detail what Mr. Smith would say," "this is not a case where the Government pulled something out of the closet by surprise and drops it on the defendant's table after the jury is sworn." [8]

### B.

■ Appellant's second challenge to the admission of the evidence regarding the August 2 incident is that the trial court erred in regarding the evidence as admissible under *Drew*. As support for this argument, appellant states that the evidence was admitted in order to show appellant's "purpose" in carrying the knife, and that " 'purpose' is not among the five enumerated exceptions" to the rule excluding evidence of prior bad acts. *See Drew, supra,* 118 U.S. App.D.C. at 16, 331 F.2d at 90. However, the concept of "purpose" as an element of the offense charged, *see supra* note 4, is, if not the same as the "intent" exception of *Drew*, very close in principle. Additionally, we have repeatedly noted that "the recited exceptions [in *Drew*] are not necessarily exhaustive." *See, e.g. Thompson v. United States,* 546 A.2d 414, 420 n. 9 (D.C.1988). Thus, we hold that the trial court's conception of the use of the evidence, as set forth in the court's instruction to the jury, was proper: "that evidence about what happened on August 2 is admitted only for your consideration of whether it shows or tends to show that on August 4, 1986, the defendant's purpose in carrying the knife was its use as a deadly or dangerous weapon."

### C.

■ Appellant's final argument, only briefly discussed by him, is that the trial court erred in failing "to conduct some type of reasonable or practical inquiry" to ascertain whether Smith's account of the August 2 incident was substantiated by evidence rising to the level of "clear and convincing."

We recently reiterated that in this jurisdiction, prior to admitting *Drew* evidence, "[i]n the absence of a final adjudication of guilt, the government must show by clear and convincing evidence that the other crime occurred and that the defendant is connected to it." *Groves v. United States,* 564 A.2d 372, 374 (D.C.1989) (citing *Light v. United States,* 360 A.2d 479, 480 (D.C. 1976); *United States v. Bussey,* 139 U.S. App.D.C. 268, 273 & n. 23, 432 F.2d 1330, 1335 & n. 23 (1970)). Although the trial court and counsel engaged in several extensive colloquies regarding the *Drew* issue, the transcript does not reveal that the trial court made an express finding by clear and convincing evidence that the August 2 incident in fact occurred. While the manner in which the trial court conducts the pre-admission inquiry under *Drew* is left to the sound discretion of the trial court, the failure of the trial court to make all the necessary inquiries in exercising its discretion constitutes error. The issue on appeal, then, becomes one of ascertaining whether the error is cause for reversal.

Defense counsel never argued to the trial court that the *Drew* evidence should be excluded on the ground that the government had not met its burden of showing by clear and convincing evidence that the prior incident had in fact occurred.[9] Hence, we

---

fense counsel, and thus "any prejudice was at least partially self-inflicted."

8. In discussing the prejudice resulting from the delay, defense counsel asserted to the trial court that there were two witnesses who would testify differently about the earlier incident, but that these witnesses were no longer available—one had moved to New York without leaving an address, and the other had not been seen by appellant "in a while." Counsel did not, however, detail the efforts made to locate these witnesses, nor specify what efforts could have

been undertaken had he had more time. Nor did he seek a continuance.

9. At an initial discussion of the problem, the defendant claimed that there was no knife involved in the August 2 incident. In all the discussion that followed, however, defense counsel never pressed before the trial court the argument that evidence regarding the August 2 incident should not be admitted on the ground that its occurrence had not been sufficiently proven. While excessive precision in specifying grounds for objection need not be demanded,

must review on the plain error standard; that is, the error must be " 'so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.' " *Crews v. United States,* 514 A.2d 432, 437 (D.C.1986) (citation omitted). The requirement that a prior bad act be proven by clear and convincing evidence is one which has been developed in this jurisdiction. No such requirement currently exists in the federal system, and indeed the approach there is now quite different.[10] Had counsel requested that the trial court make a clear and convincing finding, it could well have responded by doing so, as indeed it may have in fact done *sub silencio.*[11] Moreover, the defendant, who had earlier taken the stand in his defense, was given the opportunity to present whatever evidence he wanted to in contradiction of Smith's story as presented to the jury.[12] Nor was the evidence of the August 2 incident vital to appellant's conviction, given the eyewitness testimony of the police officer that appellant was openly wielding the knife during the August 4 altercation. In sum, on this record, we simply could not say that the trial court's failure to *sua sponte* make an explicit finding of clear and convincing evidence led to a "miscar-

riage of justice." *See Bundy v. United States,* 422 A.2d 765, 768 (D.C.1980).[13]

*Affirmed.*

Associate Judge NEWMAN concurs in the result only.

---

here the question of proof was a distinct potential ground for exclusion which could have been readily remedied. *See* text at note 10 *infra.*

10. In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), the Supreme Court held that the trial court is not required to make a preliminary determination that the government has proved "other crimes" evidence by even a preponderance of the evidence before submitting such evidence to the jury; rather, the evidence is to be admitted if there is sufficient evidence to support a reasonable jury finding that the defendant committed the other act. In reaching this conclusion, the Court relied on the language of Fed.R.Evid. 404(b).

11. Clearly, if Smith's story was believed, despite efforts to contravene it, clear and convincing evidence existed. We routinely sustain single-witness convictions, which are subject to the "beyond a reasonable doubt" test. *See, e.g., Hill v. United States,* 541 A.2d 1285, 1287 (D.C.1988).

12. No such evidence was presented, although trial counsel did cross-examine Smith fairly extensively.

13. Appellant's remaining arguments are meritless. The record does not support the contention that the court precluded either testimony or argument espousing a theory of self-defense, nor was any such instruction requested. To support his ineffective assistance of counsel claim, appellant points only to trial counsel's conduct with respect to the jury incident, and his failure to move for judgment of acquittal, neither of which meet the second prong, *i.e.,* the prejudice requirement, of *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") Nor does trial counsel's failure to ask the trial court to make a clear and convincing finding with respect to the August 2 incident meet that test. As indicated above, such a request need not have resulted in the exclusion of the evidence, and the decision not to present contrary evidence could have been tactically based.