**Shavar DANIELS, Appellant,**

**Curtis Daniels, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 91–CF–95, 91–CF–188.**

District of Columbia Court of Appeals.

Argued April 20, 1992.
Decided July 24, 1992.

---

Sandra K. Levick, Public Defender Service, Washington, D.C., for appellant Curtis Daniels, with whom James Klein and Jo-Ann Wallace, Public Defender Service, were on the brief.

Robert Morin, Washington, D.C., for appellant Shavar Daniels, with whom Bernard S. Grimm and David Kagan–Kans, were on the brief.

Leslie Ann Wise, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, and Silvia Gonzalez, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

A jury convicted appellants Curtis and Shavar Daniels of first degree murder while armed (D.C.Code §§ 22–2401, –3202 (1989 Repl.)) and carrying a pistol without a license (D.C.Code § 22–3204(a)). Appellants contend that the trial court abused its discretion when it permitted evidence of "other crimes"[1] to be admitted at trial against them. We affirm.

## I.

The thrust of appellants' argument is contained in the brief of appellant Curtis Daniels:

> Because the government never established clear and convincing evidence that appellant committed the alleged drug crimes [the other crimes], because the other crimes evidence ... proved only appellant's prior criminal relationship with the co-perpetrators of the charged offense, because the evidence had the effect of showing appellant's propensity to commit crime, and because it was vastly more prejudicial than probative, it should not have been admitted. The admission of this evidence deprived Curtis Daniels of a fair trial.... [T]he trial court erred in refusing to *voir dire* the proffered witnesses to determine whether there was clear and convincing evidence that appellant committed the other crimes.

The events leading to the murder, according to the evidence, began on Fourth Street, Southeast, in mid-June of 1988. Rick Brannon ("Country Rick") argued with Artie Ragan, they began fighting, and Brannon punched Ragan in the mouth. When Hector Colon ("Whitey") learned of the fight, he became very angry with Brannon. On July 7th, while at the apartment of Helen Jeffries on 3rd Street Southeast, Colon, Sam Smith ("Guda") and appellants discussed what, if any, action should be taken against Brannon. Colon favored killing him, but the others may have argued against it.[2]

---

1. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

2. Smith testified that when they were at Helen Jeffries' apartment, he and appellants tried repeatedly to discourage Colon from killing Brannon. Helen's daughter, Yolanda Jeffries, however, testified that during this meeting she heard Shavar, as well as Colon, say that they were "going to get" Brannon.

Later that day, Colon and these same men met again at a house on Seventh Street to discuss whether to kill Brannon. Ultimately, Colon, armed, left the apartment to find Brannon. Smith and appellants followed Colon and joined him on Sixth Street. They entered a parking lot on Fourth Street and saw a man who appeared to them to be Brannon ("Country Rick"). He had the same build and facial features as Rick Brannon and was wearing clothing and a hat similar to what Brannon usually wore. They started shooting at the man, who ran towards Third Street. They pursued him until he fell where he was shot again. Later, Smith told them that they had shot Rick Melson rather than the intended victim, Rick Brannon. Thus, although the assailants intended to kill Brannon, they ended up killing Melson.

## II.

Appellants were charged with the first degree murder of Melson. At trial, several individuals, who had witnessed different parts of the shooting and from different vantage points, testified as to what they had seen. Four different witnesses testified that one or the other or both appellants had committed the shooting[3] and one witness, who was a friend of appellants, acknowledged that they were present at the shooting of the victim.[4] Appellants generally denied committing the murder. In their defense, they presented evidence aimed at discrediting the government's witnesses and also conducted a vigorous cross-examination of these witnesses to discredit their testimony linking appellants to the crime.

The government timely argued to the trial court that appellants had been in a drug operation, evidence of which was admissible as other crimes evidence under the so-called *Drew* exception to show the motive of the alleged killers.[5] Hence, the government proffered to the court that certain witnesses would testify (1) that Shavar and Curtis were involved in Hector Colon's drug ring; (2) that the fight between Ragan, one of Colon's drug seller's, and Brannon, an independent drug dealer, was motivated by competition for drug territory; (3) that Colon's drug organization was using Helen Jeffries apartment on Third Street as a basis for operations and for preparation and storage of the crack cocaine; and (4) that appellants were involved in the discussion with Colon, their boss, as to what should be done with Brannon.[6]

Defense counsel objected and argued to the trial court that the government's proffer was inadequate in a number of respects and requested an evidentiary hearing for

---

3. Rick Brannon saw Shavar and a man who resembled Curtis at the scene, and Brannon saw Shavar shoot Rick Melson. Hope Coley saw Colon, Shavar and Curtis walk up to Melson, then "they shot him," but she did not see sparks come out of Shavar's gun. Helen Jeffries saw Colon and Shavar at the scene and witnessed both of them shooting. Although Richard Charles ("Jamaica Cee") saw one of appellants shoot Melson in the head, he could not tell which one it was because they looked so much alike.

4. Sam Smith was with Colon and appellants during the shooting. He remembered that Colon shot Melson, but could not "remember" whether Curtis or Shavar shot Melson, too.

5. *See Drew, supra* note 1, 118 U.S.App.D.C. at 16, 331 F.2d at 90. Before trial, the government contended that the other crimes evidence of the drug operation by Colon, assisted by appellants, was necessary for providing the motive for Colon and his men to kill their competitor, Brannon.

6. The government proffered that Sam Smith would testify:

> that he along with ... two Daniels, Hector Cologne [sic] came here from New York City with the specific intent to distribute crack cocaine on 4th Street, and in fact that's what they did. He observed it. He participated in it.... The reason for this murder is that Country Rick who was at that time also distributing crack on the same strip got into a fight with an individual by the name of Artie Reagan [sic] and it was over a drug sale.... [Smith] is also present when conversations are held in which [appellants] discuss what should be done to Country Rick because of his conduct with respect to Artie Reagan [sic].

Also, the government proffered that Brannon would testify about the reason for his fight with Ragan and that Ragan was a member of a drug distribution ring which included appellants, and Helen and Yolanda Jeffries would corroborate portions of Sam Smith's testimony that appellants had taken over Helen's home to distribute drugs.

the court to *voir dire* the witnesses concerning the proffered evidence that appellants were members of Colon's drug ring.[7] The trial court refused to order such an evidentiary hearing.

At the pretrial hearing, after the government's proffer as to the "other crimes" evidence and appellants' responses, the trial court ruled that:

> based on what I have heard in this trial and the proffer ... I'm satisfied that the Government's met its burden of establishing, *and the requirement is clear and convincing evidence* that there is drug involvement here. I'm satisfied that it is probative in the issue of motive. I'm satisfied that motive is relevant to the proceedings here. And I'm satisfied that the probative value outweighs the prejudicial. Of course I'm prepared to give limiting instructions when that evidence comes out. As counsel would request it, I make limiting instructions. But I'll allow that testimony as set out by [the prosecutor].

(Emphasis added.)

## III.

The trial commenced and after the government had made its opening statement, several witnesses testified as to their knowledge of Colon's drug organization and appellants' involvement therein.[8] The jury found appellants guilty as charged after receiving again the special instruction from the trial court that the "*Drew* evidence" could be considered by them *only* for the limited purpose of showing motive for the crimes charged.

In a post-verdict motion for a new trial, appellants' main arguments were that the evidence presented by the government was not consistent with the government's pretrial proffer and that Smith's testimony was insufficient to constitute clear and convincing evidence of the drug involvement of appellants, especially of Curtis Daniels, because Smith was an admitted perjurer. The trial court denied appellants' motion for a new trial, observing that the *Drew* evidence as to Curtis "wasn't as extensive as the proffer," but agreed with the government that the evidence supported "that [Curtis] was in fact a dope dealer working for Hector." The trial court determined that the government "proved enough to establish a basis for admissibility of that evidence."

## IV.

▇▇▇ In this jurisdiction, evidence of other crimes by defendant, uncharged or

7. Defense counsel did not proffer contrary witnesses, but instead challenged the government's proffer primarily on the ground of alleged inconsistencies between the proffered testimony and prior statements of the witnesses and the immunization of one witness from perjury committed at the first trial.

8. Sam Smith testified that he, Ragan, and others came with Colon to Washington, D.C. from New York to sell crack cocaine. Curtis and Shavar were already in Washington, D.C. selling drugs on Fourth Street when Smith, Ragan and the others arrived. Colon was the boss, and Shavar and Smith took orders directly from him and were paid by him. Shavar was Colon's lieutenant, whose job was to dispense drugs to Colon's sellers, to collect the money from them after the drugs were sold, and to give the proceeds to Colon. Smith had a similar job. Curtis guarded the drug cache when Colon told him to do so, and, thus, it was his job to prevent anyone from stealing the cache. He was paid by Shavar. On occasion, Smith and Shavar would pick up additional supplies of crack cocaine in New York and bring them to Washington, D.C. by train, plane, bus, car, or cab. Smith also explained to the jury that Rick Brannon, who was selling drugs on Fourth Street, was their competitor. Brannon and Ragan got into a fight over the Fourth Street drug territory. Colon was infuriated with Brannon for punching Ragan, who was one of Colon's drug sellers on Fourth Street.

Rick Brannon testified that he was an independent drug dealer on Fourth Street and fought Ragan over this drug territory. After he said that Ragan worked for Shavar, the trial court sustained appellants' objection, and struck the testimony. Brannon was permitted to say that at the time of the fight, he had seen Ragan "hanging out" with Shavar.

Helen Jeffries testified that Colon, Smith, and Ragan were staying at her apartment, and later, Shavar moved in, too. She called Shavar, "one of the head men" in the drug organization. Curtis would visit her apartment "to associate" with these men.

Yolanda Jeffries testified that Colon, Smith, Ragan and others had moved into her mother's apartment and were selling drugs. While at the apartment, she heard Colon, Smith and Shavar discussing that Brannon was back. Colon and Shavar said they were going "to get" Brannon.

unproven, is inadmissible except for specified, limited purposes such as to show motive. *Drew, supra* note 1, 118 U.S.App. D.C. at 15–16, 331 F.2d at 89–90. It should be noted that *Drew* did not provide any guidance as to what evidentiary standard should be met by the government in showing to the court that the defendant committed another crime, uncharged and unproven. Whether there was sufficient evidence that the defendant had committed crimes other than the charged crime and whether such evidence should be admitted as a "*Drew* exception" was left to the discretion of the trial court. Our review of such determination by the trial court was for abuse of discretion. *Wooten v. United States*, 285 A.2d 308 (D.C.1971).

This court *first* employed the phrase "clear and convincing evidence" in *Light v. United States*, 360 A.2d 479 (D.C.1976). There, the defendant was charged with unauthorized use of a vehicle "stemming from his use of a government motor pool car for personal purposes on September 26, 1974." *Id.* at 479. We concluded in our opinion: "Appellant contends that the use of the five prior instances of car misuse, which have not been adjudicated, nor connected through evidence with him, was unduly prejudicial to his case. We agree." *Id.* at 480.

We went on to note in *Light:* "The government *did not* suggest that the evidence would constitute an exception to the rule making other crimes inadmissible, but merely stated that it wished to use the evidence as background material to show how appellant was caught.... Since appellant's arrest was not then in issue, this [the other crimes evidence] was hardly relevant or necessary." *Id.* (emphasis added; footnote omitted)

We then gratuitously commented in a footnote in *Light*, citing *United States v. Bussey*, 139 U.S.App.D.C. 268, 273 & n. 23, 432 F.2d 1330, 1335 & n. 23 (1970): "There is authority that, where the evidence involves an alleged crime not reduced to judgment, there must be 'clear and convincing evidence,' adduced in an initial inquiry,

that the defendant is connected with the other crimes before the jury should be permitted to hear the evidence." *Light, supra*, 360 A.2d at 481 n. 3.

However, an examination of *Bussey* as the authority for the clear and convincing standard of proof in this context reveals that no application of such an evidentiary standard for other crimes evidence was at issue. The question to be resolved in *Bussey* was whether the evidence of the other crime was admissible *in the government's case-in-chief* under the identity exception to the *Drew* rule and whether appellant had been prejudiced by the trial court's failure to give the jury limiting instructions as to the proper use of the other crimes evidence in their deliberations.

In *dictum,* the court suggested that the government, rather than presenting the other crimes evidence in its case-in-chief, alternatively could have introduced such evidence as *rebuttal* of an alibi provided by a witness for the defense. The federal circuit court of appeals went on to note that if the prosecutor had sought to follow this suggested *impeachment* procedure, the trial court should then have conducted an inquiry to determine whether the defendant was connected with the other crime by "clear and convincing evidence." The opinion then cites *Smith v. United States*, 124 U.S.App.D.C. 57, 58 n. 4, 361 F.2d 74, 75 n. 4 (1966), as its authority for the clear and convincing standard of proof for such evidence. *Smith* makes no mention of such a standard, but instead "caution[s] the government concerning its use of appellant's police record to establish a prior conviction which was later reversed on appeal."

Later, we held in *Groves v. United States*, 564 A.2d 372, 374 (D.C.1989), modified *per curiam*, 574 A.2d 265 (1990), that "[i]n the absence of a final adjudication of guilt, the government must show by clear and convincing evidence that the other crime occurred and that the defendant is connected to it," and cited as our authority, the *dicta* at issue in *Light, supra*, 360 A.2d at 480 and *Bussey, supra*, 139 U.S.App. at

273 & n. 23, 432 F.2d at 1335 & n. 23.[9] Thereafter, in *Lewis v. United States,* 567 A.2d 1326, 1330 (D.C.1989), we recognized that *Groves, supra,* 564 A.2d at 374, reiterated the *Light* and *Bussey* "requirement" of the clear and convincing evidentiary standard for admissibility of other crimes evidence.

In *Lewis,* however, we also reaffirmed that "the manner in which the trial court conducts the pre-admission inquiry under *Drew* is left to the sound discretion of the trial court." 567 A.2d at 1330. We also acknowledged that while exercising this discretion, the failure by the trial court to make all the necessary inquiries constitutes error, but such error is not necessarily "cause for reversal." *Id.*[10]

## V.

▪▪▪ Against this decisional background, we review the trial court's decision to admit the other crimes evidence for abuse of discretion. *Groves, supra,* 564 A.2d at 374. The trial court may act within its discretion to conduct its pretrial inquiry on the admissibility of the other crimes evidence by means of a "detailed proffer from the government" instead of holding, in effect, a bench trial of the other crime, which presumably will be fully replicated before the jury if admitted. *Id.* at 375. In its proffer, the government must show the trial court that the evidence that it proposes to present during the trial would, if believed, clearly and convincingly establish that the uncharged crime occurred and the defendants were connected to it.[11] If the government fails somehow to present at trial all the evidence that it had proffered or if the trial court finds the evidence in some part deficient because of credibility problems or otherwise, the trial court considers the evidentiary sufficiency and tailors the remedy according to the severity of the failure of proof. The trial court, in its discretion, may, for example, restrict the government's closing argument, give limiting instructions to the jury, or, where it deems there is a probability of "a miscarriage of justice," declare a mistrial. *See Bundy v. United States,* 422 A.2d 765, 768 (D.C.1980).

## VI.

The trial court in the instant case deemed the evidence as admissible under the motive exception of *Drew* and declined to consider whether the evidence was admissible, as the government first argued, pursuant to *Toliver, supra* note 10, 468 A.2d at 960 and *Green, supra* note 10, 440 A.2d at 1007, as "relevant to explain the immediate circumstances surrounding the offense charged."[12]

---

**9.** In the meantime, in *dictum* in *Ali v. United States,* 520 A.2d 306, 310 n. 4 (D.C.1987) and *Thompson v. United States,* 546 A.2d 414 (D.C. 1988), we had noted the clear and convincing standard for other crimes evidence, citing *Light* and *Bussey* as authority.

**10.** We note, however, that this court has not explicitly extended the clear and convincing standard in these situations where evidence of the uncharged other crime, when temporally close to the crime at issue, is admitted to explain the charged crime because the acts are so closely intertwined that the evidence of the former is needed to explain the latter. *Hazel v. United States,* 599 A.2d 38, 40 n. 3. (D.C.1991); *see Parker v. United States,* 586 A.2d 720, 724–25 (D.C.1991) (evidence of other alleged acts of violence against wife not admissible to explain charged crime of simple assault against wife because uncharged crime not nearly contemporaneous but extended to time about three months earlier); *Toliver v. United States,* 468 A.2d 958, 960 (D.C.1983) (evidence of sales of heroin admissible to explain the surrounding circumstances of the possession of narcotics offense); *Green v. United States,* 440 A.2d 1005, 1007 (D.C.1982) (no error to admit evidence that appellant made two sales of marijuana shortly before his arrest because evidence was relevant to explain the immediate circumstances surrounding the commission of the unlawful possession of marijuana).

**11.** If the trial court fails *sua sponte* to make an explicit finding that there is clear and convincing evidence "that the other crime occurred" and appellants are "connected to it" but counsel fails to request the trial court to make such a finding, our review then is for plain error. *Lewis, supra,* 567 A.2d at 1330–31.

**12.** Although the other crimes evidence here may have been admissible under *Toliver* and *Green* to explain the surrounding circumstances of the charged crime, we do not reach that question here because it is not at issue in the instant appeal.

Thereafter, the trial court made all the necessary pretrial other crimes inquiries: it stated *explicitly* (1) that "the Government met its burden of establishing ... [with] clear and convincing evidence that there is drug involvement here"; (2) that the evidence is "probative in the issue of motive"; (3) that "motive is relevant to the proceedings here"; and (4) that "the probative value outweighs the prejudicial." Moreover, the trial court was also careful to tailor its ruling to insure there was no undue prejudice to appellants: thus, it refused to allow details about specific individual drug acts by appellants; it proposed to give "limiting instructions" to the jury as appropriate; and it recognized that if the government failed to meet its evidentiary burden on the admissible other crimes evidence, that the case might enter "mistrial territory." Finally, in its denial of the post-trial motion for a new trial, as set forth above, the trial court in effect affirmed its belief that the government's evidence as actually presented met the requisite standard by finding that the government "proved enough to establish a basis for admissibility of that evidence."

We are not persuaded upon this record that the trial court abused its discretion in the manner in which it conducted its pretrial *Drew* inquiry. We find that the testimony adduced at trial was substantially similar to the government's proffer: (1) appellants came from New York to sell drugs with Colon; (2) appellants sold drugs here; (3) the motive for the killing was a fight with Brannon over drug distribution territory; and (4) appellants participated in discussions about retaliation against Brannon.[13]

Furthermore, the trial court made the requisite finding that the evidence of other crimes was relevant and probative as to motive, and we agree. The reason for the murder, albeit of the wrong man, was that Colon's drug organization, which included appellants, was in competition with Brannon for the same territory to sell the same product, crack cocaine.

■ The evidence may have been in some measure prejudicial to appellants beyond that inherent in any proof of guilt. However, without such evidence, the shooting could have made little sense to the jury, in light of what might have been seen as the otherwise incomplete and confusing facts of the case.[14] Nevertheless, when the trial court determines that the other crime evidence is relevant to show motive and its occurrence is established clearly and convincingly, as in this case, it is then "generally conceded," as we do here, "that the prejudicial effect may be outweighed by the probative value." *Groves, supra*, 564 A.2d at 374 (quoting *Drew, supra* note 1, 118 U.S.App.D.C. at 16, 331 F.2d at 90). Thus, under the circumstances here we find no abuse of discretion because the trial court determined that the probative value of this evidence outweighed its prejudicial impact and the record supports such determination.

## VII.

In sum, the trial court admitted the evidence of other crimes only after making

13. The evidence presented was that Shavar and Curtis Daniels were in Washington, D.C., selling drugs on Fourth Street when Colon and his other associates arrived. Shavar was a "lieutenant" or "head man" in Colon's organization and was paid by Colon. Shavar was responsible for distributing the drugs to Colon's sellers and collecting the proceeds. Even though Curtis was not a lieutenant in Colon's organization as was his brother Shavar, nevertheless, Curtis guarded Colon's drugs in the apartment to prevent anyone from taking them when ordered to do so by Colon, and Shavar paid him.

Brannon was selling drugs on Fourth Street in competition with Colon's organization. This triggered his fight with Ragan, one of Colon's sellers. When Colon was considering whether to kill Brannon in retaliation for his physical interference with Ragan, his seller, both Curtis and Shavar were involved in the discussion. From this, one could reasonably infer that both Curtis and Shavar were in a position of trust in Colon's organization. Although Curtis and Shavar may have argued against killing Brannon, they ultimately joined Colon, their leader, in the shooting of the wrong man, as it turned out, rather than Brannon.

14. A jury had already tried the case without evidence explaining why appellants intended to kill one man but instead killed another, and the jurors were unable to reach a verdict.

"all the necessary inquiries in exercising its discretion," *Lewis, supra,* 567 A.2d at 1330, and applied the correct evidentiary standard,[15] *Groves, supra,* 564 A.2d at 374. It carefully tailored the admissibility of the evidence so as to give the jury just enough background to make sense of the shooting but no more so as to cause undue prejudice to appellants.[16] Moreover, the trial court instructed the prosecutor not to emphasize appellants' involvement in Colon's drug organization in her closing argument. Also, the trial court gave the appropriate limiting instruction to the jury that the evidence should be considered, if at all, for motive of the killing. In addition, the trial court was aware that the government's failure to meet sufficiently its evidentiary standard for the other crimes evidence was "mistrial territory," because it expressly denied appellants' motion for a mistrial on this ground. Under all these circumstances, the trial court did not abuse its discretion in admitting the evidence of appellants' "other crimes" and the judgment must be and is

*Affirmed.*

SCHWELB, Associate Judge, concurring in the judgment:

We have held that in order to introduce evidence that a defendant committed an uncharged offense, the prosecution must "show by clear and convincing evidence that the other crime occurred and that the defendant is connected to it." *Groves v. United States,* 564 A.2d 372, 374 (D.C. 1989), *modified* 574 A.2d 265 (D.C.1990) (per curiam). This showing, according to the decision on which the doctrine is based, must be made *"before* allowing the jury to hear the details of the [other crime]." *United States v. Bussey,* 139 U.S.App.D.C. 268, 273, 432 F.2d 1330, 1335 (1970) (emphasis added).

A proffer is not evidence at all, *In re R.E.G.,* 602 A.2d 146, 148 (D.C.1992); *Jackson v. United States,* 589 A.2d 1270, 1271 (D.C.1991) (per curiam), and thus cannot constitute "clear and convincing" evidence, or even murky and unpersuasive evidence. Accordingly, this court having elected to impose this requirement of "clear and convincing evidence," I am at a loss to understand how we can allow such a requirement to be satisfied by an attorney's proffer. Aside from the fact that a proffer by a lawyer is not evidence by a witness,[1] the judge cannot tell whether proposed testimony is "clear" or "convincing"—adjectives which characterize the *quality* of the evidence—without evaluating the credibility of the individual who is to provide it.

I note that the Supreme Court held unanimously in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), construing Fed.R.Evid. § 404(b), that the government need not even demonstrate to the judge by a preponderance of the evidence that the defendant committed the uncharged offense. "Such evidence should be admitted if there is sufficient evidence to support a finding by the jury [by a preponderance] that the defendant committed the similar act." *Id.* at 685, 108 S.Ct. at 1499. I think it would make sense to conform our jurisprudence to *Huddleston;* a proposition convincing to all nine of the Supreme Court justices surely merits our consideration. *But see Groves, supra,* 564 A.2d at 375 n. 5.

15. In his pretrial rulings as to the admissibility of the other crimes evidence, the trial judge stated that he knew that the appropriate standard was clear and convincing evidence, and he proceeded explicitly to find that the prosecution's proffer met this standard. Contrary to appellants' contention, it is clear in the context of the record that the trial judge again applied the clear and convincing evidentiary standard when he denied appellants' post-trial motions claiming that the other crimes evidence should not have been admitted under the *Drew* exception.

16. Because the trial court refused to permit the government to present testimony regarding details about specific drug acts by appellants unless they specifically related to involvement in Colon's organization, the proffered testimony by Hope Coley that Curtis was a drug dealer was consequently excluded on this basis.

1. As every juror is told in every criminal jury trial in this jurisdiction, "[s]tatements and arguments of counsel are not evidence." District of Columbia Criminal Jury Instruction § 2.05, at 41 (3d ed. 1978).

While "clear and convincing" continues (at least in theory) to reign supreme, however, I think we ought to eschew an analysis which, by resort to judicial alchemy, converts non-evidence into evidence. People should not be deprived of their freedom on the pretense that something is so when it demonstrably is not so. If we mean that the prosecution must make a proffer which, if true, will be convincing to the judge, we should cast the rule in those terms, and not proclaim the altogether different principle that proof by clear and convincing evidence is required. Our rhetoric should coincide with reality; if the ostensible requirement of clear and convincing evidence is a misnomer, we should say so, loud and clear. If it is not a misnomer, then we should either unambiguously abandon it [2] or follow it according to its stated terms and hold that a prosecutor's proffer does not make the grade.

Nevertheless, I agree that the convictions must be affirmed. Assuming, *Groves* to the contrary notwithstanding, that evidence means evidence, and that the trial judge should have conducted a *voir dire* examination of the "other crimes" evidence outside the presence of the jury, it is obvious from what occurred thereafter, and specifically from the judge's refusal to grant a mistrial, that he would have admitted the contested evidence even if such an evidentiary hearing had been held. Any error was therefore harmless.

**2.** Such abandonment might, however, require us to go en banc. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).